**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Michael THOMAS and Joseph Yoppolo,
Defendants-Appellants.**

**No. 73–1148.**

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 2, 1973.

Decided Dec. 6, 1973.

George E. Woods, Detroit, Mich., on brief, for defendant-appellant, Michael Thomas.

John M. Chase, Jr., Detroit, Mich., on brief, for defendant-appellant, Joseph Yoppolo.

Ralph B. Guy, Jr., U. S. Atty., Sidney M. Glazer, Kirby W. Patterson, Attys., Crim.Div., Dept. of Justice, Washington,

D. C., Alfred G. Kaufman, Detroit, Mich., James E. Kelley, Jr., Sp. Attys., Washington, D. C., on brief, for plaintiff-appellee.

Before PHILLIPS, Chief Judge, and PECK and LIVELY, Circuit Judges.

PER CURIAM.

Appellants and two co-defendants were indicted on five counts of counterfeiting in violation of 18 U.S.C. §§ 472, 474, and 501, and on one count of conspiracy to counterfeit in violation of 18 U.S.C. § 371. In a previous action before this Court, in an unpublished opinion we reversed an order of the District Court which sustained the defendants' motion to suppress evidence obtained under a search warrant. United States v. Thomas, No. 71–1161 (6th Cir. May 25, 1972). Upon remand for trial, co-defendant Andrew Asaro received a directed judgment of acquittal at the conclusion of the Government's case and co-defendant Michael Lazarov testified for the Government.[1] Appellants were then convicted by a jury on the conspiracy count and four of the substantive counts and were sentenced to concurrent terms of five years imprisonment on each count.

It appears that Asaro was the first witness called to testify by the appellants. Counsel for the appellant Thomas advised the prospective witness that his testimony could lead to a prosecution for misprision of a felony and inquired if he wished to confer with his attorney. Asaro acknowledged the advice but declined the opportunity to seek counsel. Thereupon the Court made an additional explanation of the matter and upon further inquiry from Thomas' counsel, Asaro agreed to consult counsel. A short recess was called to allow Asaro to locate his counsel, who had left the courtroom when his motion for acquittal was granted.

During the recess Asaro was unable to locate his attorney but, as he later testified, during this time he was approached by a secret service agent involved in the case who told him that he *would* be prosecuted for misprision of a felony if he testified in the case. Asaro testified for the limited purpose of describing the conversation between the agent and himself and the agent was permitted to testify in rebuttal that he only advised the witness that he *could* be prosecuted if he took the stand. Appellant Thomas' lawyer was present for a portion of the exchange between Asaro and the agent and attempted to testify in corroboration of Asaro's testimony, but the Court refused to permit this. The Court reprimanded the secret service agent and the Assistant United States Attorney on whose behest the agent had approached the prospective witness. The Court also denied counsel's motions for a mistrial and to be relieved as counsel for Thomas. Following this, Asaro failed to testify. The Government advised the Court that Asaro would not be prosecuted if he testified although immunity was not provided. Asaro indicated that he would testify only under subpoena, which was not requested.

On appeal, the appellants contend that the prospective witness Asaro was prejudicially intimidated and threatened by the Government, in effect driven off the witness stand, thereby depriving appellants of due process of law in violation of the Fourteenth Amendment.

■ We first turn to the leading case of Washington v. Texas, 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967), which clearly established that a party's right to present his own witnesses in establishing a defense is a fundamental element of due process of law and is protected. The Government's position, however, is that the factors of what it describes as overwhelming evidence of guilt, the lack of a proffer of Asaro's testimony and the failure of defense counsel to recall Asaro as a witness substantiate the conclusion that there is in-

---

1. The record indicates that Lazarov's oral motion to sever the indictment as to trial for him was granted by the District Court.

sufficient prejudice to justify a new trial.

In this regard the recent case of Webb v. Texas, 409 U.S. 95, 93 S.Ct. 351, 34 L.Ed.2d 330 (1972), is illuminating. In that case, the trial judge gratuitously and severely admonished the sole witness proffered by the defense, who had a criminal record and was then serving a prison sentence, on the dangers of perjury, whereupon the witness refused to testify. The Supreme Court, in reversing the conviction, found that " . . . the unnecessarily strong terms used by the judge could well have exerted such duress on the witness' mind as to preclude him from making a free and voluntary choice whether or not to testify." 409 U.S. at 98, 93 S.Ct. at 353. Although two dissenting Justices suggested that overwhelming evidence of guilt and a "bare allegation of prejudice" should be relevant considerations, the per curiam opinion emphasized the fundamental nature of the accused's right to present witnesses in his own behalf and did not indicate that any factors such as those urged by the Government here or by the dissenting Justices in *Webb* should be considered. For reasons detailed below, even if we could consider the factors here urged, we conclude that they would not serve to overcome the prejudice inuring to the appellant as a direct result of the Government's misconduct.

■ There is no question but that it was completely unnecessary for the Government to approach the prospective witness. The transcript reveals that both the District Judge and counsel for the co-defendant Thomas went to considerable lengths to advise Asaro that his decision to testify should be based on full knowledge of the consequences, confirmed through his own counsel. Consequently the actions of the Assistant U.S. Attorney, through the secret service agent, in seeking out the prospective witness and on an ex parte basis gratuitously admonishing him cannot be viewed as serving any valid purpose, even accepting the assertions of good faith. Further, considering the caution carefully expressed to Asaro in the courtroom, it is difficult not to regard the Government's later out-of-court communication with Asaro as an attempt to intimidate.

■ The Government argues that its later statement to the District Court that Asaro would not be prosecuted based on his testimony was sufficient to overcome any prejudice inuring to the appellant. In this regard the Government stresses that the defense counsel's failure to recall the witness or to issue a subpoena ad testificandum should be a pivotal consideration. We cannot agree. There is an obvious and considerable difference between the free and open testimony anticipated of a voluntary witness and the perhaps guarded testimony of a reluctant witness who is willing to appear only at the command of the court. Further, the Government's action here substantially interfered with any free and unhampered determination the witness might have made as to whether to testify and if so as to the content of such testimony. The result is that the misconduct of the Government directly produced an opportunity for the jury to draw prejudicial inferences from the fact that the witness failed to testify. In addition, the appellant makes the point that the Government's misconduct had a direct bearing on the defense counsel's trial strategy, suggesting that had Asaro testified appellant might not have. The Government's statement that it would forego prosecution will not serve to wipe out the prejudicial effect of the event. Nothing short of complete immunity, if even that, could have relieved Asaro's apprehension, and restored his free and voluntary choice, eliminating the prejudice.

The judgment of the District Court is reversed and the cause is remanded for a new trial.