**UNITED STATES of America,
Plaintiff-Appellee,**

**v.**

**Albert VALDES, Defendant-Appellant.**

**No. 76–1001.**

United States Court of Appeals,
Fifth Circuit.

Jan. 20, 1977.

Edward L. Kelly, Jr., Bernard H. Dempsey, Jr., Orlando, Fla., for defendant-appellant.

John L. Briggs, U. S. Atty., Jacksonville, Fla., Robert A. Leventhal, Wm. Francis Duane, Asst. U. S. Attys., Orlando, Fla., for plaintiff-appellee.

Before AINSWORTH and RONEY, Circuit Judges, and ALLGOOD, District Judge.

RONEY, Circuit Judge:

Albert Valdes was convicted of conspiracy to import cocaine in violation of 21 U.S.C.A. §§ 812, 952(a), and 960(a)(1). Conceding that the evidence presented at trial was sufficient for his conviction, his contentions on this appeal relate to alleged

Government misconduct with respect to four witnesses who refused to testify at the trial. Valdes argues that these witnesses asserted their Fifth Amendment privilege because of certain Government activity alleged to be improper, so that the Government deprived him of their favorable testimony. He also raises certain discovery and Jencks Act violations, and one point as to the admissibility of evidence. We affirm his conviction.

A short recitation of the facts will show the part the four witnesses played. On October 31, 1974 Craig Jacobson flew from his home in Minnesota to Atlanta with $10,-000 in his suitcase. He was joined by Daniel Brady and the two of them flew on to Melbourne, Florida. There they were met by James Holdsworth and John Roberts. All four men proceeded to an apartment in Vero Beach, Florida, where they were met by Sheldon Wynne, and his wife-to-be, Anita Long. In accordance with plans formulated that evening, defendant Valdes and Wynne flew to Colombia, South America, on November 2, 1974 to purchase cocaine with the $10,000.

As had been prearranged, the cocaine was mailed to the United States in three packages. Two packages were sent to Minnesota addresses, but were intercepted by a customs inspector at Kennedy Airport in New York. After determining that these packages contained cocaine, he forwarded them to a postal inspector in Minnesota, along with a "chain of custody" receipt. A controlled delivery of the packages was arranged and the Minnesota participants were arrested. These two packages were addressed in Wynne's handwriting.

The third package was sent to Laurel Maurer, a college student in Deland, Florida. This package was intercepted by customs agents in Miami. When Ms. Maurer picked up the package she was met by Drug Enforcement Administration agents, with whom she agreed to cooperate. At their direction, she made a prearranged call to defendant Valdes and informed him that the package had arrived. Subsequently, Wynne and John Herron, a friend and co-worker of defendant Valdes, came to get the parcel. They were arrested. The defendant was arrested the next day. The handwriting on this package was that of Valdes.

Of these people, Daniel Brady, James Holdsworth and John Roberts, in on the original meeting at Vero Beach, and John Herron, who with Valdes, sought delivery of the package in Florida, were called by the Government but refused to testify on Fifth Amendment grounds.

Defendant asserts that these witnesses would have testified favorably to him, but they refused because of threats of prosecution by the Government. Defendant relies particularly upon John Herron. After a lengthy interview prior to putting him on the stand, the district attorney advised Herron that a previous grant of immunity did not extend to perjury. Herron had previously given a sworn statement. Herron then declined to testify when called by the Government because his testimony might tend to incriminate him.

The defendant loses this argument on appeal for three reasons. First, the defendant relies almost entirely on an affidavit which is not a part of the formal record on appeal. According to the record, defense counsel declined an opportunity to establish the factual basis of these allegations. During the trial the Assistant United States Attorney stated, "If Mr. Dempsey thinks I put these witnesses up to taking the Fifth and refusing to cooperate, he can call me as a witness . . . and get this out in the record . . . ." Defense counsel declined the invitation and remarked, "I don't suggest any impropriety." The record reflects no facts upon which to posit a reversal of the conviction.

Second, in spite of this, we might be inclined to return the case to the district court for development of the facts if the bare assertions on appeal were sufficient to indicate that the defendant could establish a factual base for relief. The conduct of the Government asserted here, however, is not sufficient to bring the case within the

ambit of the cases upon which the defendant relies.

■ In *United States v. Thomas,* 488 F.2d 334 (6th Cir. 1973), a key defense witness was advised by defense counsel that he might be subjected to prosecution for misprision of a felony and inquired if he wished to confer with his attorney. The witness agreed to consult with his own counsel and a recess was called so that he might do so. During the recess "he was approached by a secret service agent involved in the case who told him that he *would* be prosecuted for misprision of a felony if he testified in the case." *Id.* at 335. Subsequently, the witness refused to testify even though the Government informally advised the court that he would not be prosecuted. The Sixth Circuit remanded the case for a new trial because "the Government's action here substantially interfered with any free and unhampered determination the witness might have made as to whether to testify and if so as to the content of such testimony." *Id.* at 336. The present situation is unlike *Thomas.* Here the Government's alleged action, rather than improperly interfering with the intelligent determination of the witness as to his Fifth Amendment rights, simply provided him with the additional fact that his immunity did not extend to perjury. *See United States v. Stevenson,* 445 F.2d 25, 29 (7th Cir.), *cert. denied,* 404 U.S. 857, 92 S.Ct. 108, 30 L.Ed.2d 99 (1971); *United States v. Closson,* 383 F.Supp. 1119 (E.D.Pa.1974), *aff'd,* 511 F.2d 1392 (3rd Cir. 1975).

■ In *United States v. Morrison,* 535 F.2d 223 (3rd Cir. 1976), a witness was informed before trial that charges against her would be dropped because she had been a minor at the relevant time. Before trial the prosecutor engaged in several discussions with the witness which the Third Circuit characterized as "repeated warnings which culminated in a highly intimidating personal interview." *Id.* at 227. In *Morrison,* the court came to the explicit conclusion that the Government had virtually driven a key defense witness from the stand and that such "bizarre conduct to-

ward a witness for the defense is not be condoned." *Id.* at 228. That decision relies on facts quite different than those present in the case at bar. Herron was allegedly only spoken to once by the United States Attorney and his own counsel was present throughout those proceedings. It was only after consultation with his own counsel that Herron chose to invoke his Fifth Amendment privileges. The alleged facts as to Government activity fail to rise to the level of improper conduct meriting reversal, even if true.

Third, we do not have before us the affidavit originally given by Herron to the Government. We do not know if Herron's testimony would have been helpful to the defendant. The Government, and not the defendant, called him. We can only assume that had Herron testified in accordance with his prior statement, his testimony would have been favorable to the Government. The defendant has failed to demonstrate otherwise. If he was going to contradict his prior affidavit under oath, he would have been guilty of perjury at one time or the other, and had every right to refuse to testify.

■ The defendant contends that the district court failed to satisfy its obligation to determine whether Herron had a valid basis for invoking the Fifth Amendment as required by *United States v. Gomez-Rojas,* 507 F.2d 1213 (5th cir.), *cert. denied,* 423 U.S. 826, 96 S.Ct. 41, 46 L.Ed.2d 42 (1975), and *United States v. Melchor Moreno,* 536 F.2d 1042 (5th Cir. 1976). We fail to perceive how defendant can complain about any defect in the district court's procedure in this regard. The rule is for the benefit of the party calling the witness. The Government tried to produce Herron. There is nothing in the record to indicate that he would have been called as a defense witness. On the record before us, the Government was the party deprived of his testimony, and it seems to us that only the Government could complain about failure to get the testimony because of improper assertion of the Fifth Amendment privilege.

The claim that prosecutorial intimidation induced Holdsworth, Brady and Roberts to invoke the Fifth Amendment so as to preclude the defendant's examination of them is also meritless. Each of these witnesses asserted his right after being fully informed in open court by the United States Attorney with the court's approval. The record does not indicate that any of these witnesses had been promised immunity. Each was being called as a Government witness, and none was recalled by the defense. Similarly the trial judge determined that each had a justifiable basis for refusing to testify. Other than the bare assertion in the brief, there is nothing in the record before us suggesting that any of the witnesses involved would have testified favorably to the defendant. In the words of defendant's reply brief, all that this Court could do would be to "speculate that their accounts of the facts . . . contradicts the prosecution witnesses." Such speculation does not furnish an appropriate base for reversal of a criminal conviction.

Defendant contends that he was prejudiced by the admission into evidence of various evidentiary items not disclosed to him prior to trial, although required to be disclosed by a discovery order. The items included the result of chemical tests performed on the cocaine, the package wrappers, handwriting samples of Wynne, post office receipts, the agreement between the Government and Wynne's wife concerning immunity, and certain photographs. In the event of noncompliance with discover orders, former Rule 16(g), Federal Rules of Criminal Procedure, in effect at the time of trial, provided that the court may

. . . order such party to permit the discovery or inspection of materials not previously disclosed, grant a continuance, or prohibit the party from introducing in evidence the material not disclosed, or it may enter such other order as it deems just under the circumstances.

Relief for violations of discovery rules is in the discretion of the trial court. To support a claim for reversal of the exercise of that discretion, the accused must show prejudice to substantial rights. *United States v. Arcentales*, 532 F.2d 1046 (5th Cir. 1976); *United States v. Saitta*, 443 F.2d 830 (5th Cir.), *cert. denied*, 404 U.S. 938, 92 S.Ct. 269, 30 L.Ed.2d 250 (1971). The defendant has made no such showing of prejudice here. Notwithstanding his possible nonreceipt of various chemical tests, a chemical analysis of the seized substance conducted by his own expert revealed it to be cocaine. The defendant has failed to show an abuse of discretion in the court's determination not to sanction the Government because of technical violations of the discovery order.

Appellant next complains that the Government did not comply with the Jencks Act, 18 U.S.C.A. § 3500, in respect to statements by Craig Jacobson and Customs Agent Salvatore Elia. The "statement" of Craig Jacobson was an interview report prepared by a Drug Administration agent. The report was made available to the defendant only after the direct testimony of the agent, and not after Jacobson's testimony which preceded that of the agent. Strict compliance with the Jencks Act is irrelevant, however, because the interview report was not a "statement" of the witness subject to production under this section of the statute. *See, e. g., United States v. Crumpler*, 536 F.2d 1063 (5th Cir. 1976); *United States v. Muckenstrum*, 515 F.2d 568 (5th Cir.), *cert. denied*, 423 U.S. 1032, 96 S.Ct. 564, 46 L.Ed.2d 406 (1975); *United States v. Scaglione*, 446 F.2d 182 (5th Cir.), *cert. denied*, 404 U.S. 941, 92 S.Ct. 284, 30 L.Ed.2d 254 (1971); *Matthews v. United States*, 407 F.2d 1371 (5th Cir. 1969), *cert. denied*, 398 U.S. 968, 90 S.Ct. 2177, 26 L.Ed.2d 554 (1970).

The second Jencks Act statement which the defendant did not receive was a "seizure report" prepared by Agent Elia at the time he discovered the drugs. The Government did introduce a chain of custody report prepared by Agent Elia, but claims it could not locate and therefore neither produced nor turned over to defendant the seizure report. The only difference in the two reports is at the bottom of the page in respect to delivery of the seized

substance. Agent Elia testified that the two reports were filled out at the same time. Under these circumstances, the two reports were virtual copies and the delivery of the chain of custody report to the defendant was adequate compliance with the Jencks Act.

Appellant's final allegation is that the court erred in admitting into evidence a second seizure report prepared, not by Elia, but by the customs agent who seized the packages at Kennedy Airport. The customs agent testified and was cross-examined about this exhibit. Generally the admissibility of evidence is a matter within the trial court's discretion. *United States v. Isaacs*, 516 F.2d 409 (5th Cir.), *cert. denied*, 423 U.S. 936, 96 S.Ct. 295, 46 L.Ed.2d 269 (1975). We cannot say that the district court committed reversible abuse of discretion when it allowed that report to be introduced into evidence.

AFFIRMED.