963 F.2d 380
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Martin Glaves KUNA, Defendant-Appellant.
 No. 90-50695.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Dec. 6, 1991.
Decided May 18, 1992.
 
 Before JAMES R. BROWNING, FERGUSON and REINHARDT, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 We affirm Kuna's conviction on one count of conspiracy to possess methamphetamine with intent to distribute in violation of 21 U.S.C. § 846 and one count of possession of methamphetamine with intent to distribute in violation of 21 U.S.C. § 841(a)(1).
 
 
 3
 Kuna objects to the introduction of evidence that he had altered a consultant's letter-report in order to obtain a more favorable fire department rating, on the ground the evidence (1) violated Fed.R.Evid. 404(b); (2) was not relevant; (3) went only to Kuna's poverty and (4) violated Fed.R.Evid. 608(b).
 
 
 4
 The evidence was not per se inadmissible under Rule 404(b) because the alteration occurred after commission of the charged offense. "[I]t is clear that evidence of subsequent crimes or acts of misconduct is admissible if relevant to an issue at trial." United States v. Ayers, 924 F.2d 1468, 1473 (9th Cir.1991). The evidence satisfied the test for admissibility under Rule 404(b): (1) Kuna admitted he changed the report; (2) the evidence was introduced to prove a material issue--Kuna's motive for participating in the drug transaction; (3) the alteration was not too remote in time--it occurred six months after the drug offense; (4) it was not necessary that the alteration be similar to the charged offense--it was admitted to prove motive, not intent. See id. (citing United States v. Spillone, 879 F.2d 514, 518-20 (9th Cir.1989)).
 
 
 5
 Kuna argues the alteration was not relevant to the issue of Kuna's intent because it occurred some months after the drug transaction. The alteration took place during a long downturn in Kuna's financial affairs that began before Kuna attempted to sell the drugs to the government agent and continued until after Kuna was arrested, indicted, and faced trial. It provided indirect evidence that Kuna faced financial difficulties during a period that included Kuna's participation in the drug transaction and thus established a motive for that participation. See United States v. Feldman, 788 F.2d 544, 557 (9th Cir.1986).[1]
 
 
 6
 Kuna argues the evidence should have been excluded even if relevant because this court disfavors evidence equating poverty with motivation to commit crime. The prosecution did not suggest Kuna was poor, but rather that he had a specific and possibly motivating financial problem at the time of the crime. United States v. Jackson, 882 F.2d 1444, 1449-50 (9th Cir.1989) suggests such evidence is admissible. See also Feldman, 788 F.2d at 557 (the fact that the defendant owed substantial sums of money was relevant to his motive to commit bank robbery); United States v. Saniti, 604 F.2d 603, 604 (9th Cir.1979) ("Evidence that tends to show that a defendant is living beyond his means is of probative value in a case involving a crime resulting in financial gain.").
 
 
 7
 Kuna argues that the probative value of the evidence was substantially outweighed by the danger of unfair prejudice. See Fed.R.Evid. 403. Kuna does not indicate why the admittedly prejudicial effect of the evidence would have been unfair. See Carter v. Hewitt, 617 F.2d 961, 972 (3d Cir.1980) (evidence is unfairly prejudicial if it has an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one). The district court's conclusion that the probative value of the evidence exceeded any unfairly prejudicial effect was not an abuse of discretion. See Feldman, 788 F.2d at 557.
 
 
 8
 Since evidence of the alteration of the report was not admitted solely to impeach, but also to prove motive, Rule 608(b) did not require its exclusion, as Kuna argues. See United States v. Green, 648 F.2d 587, 596 (9th Cir.1981) (where evidence admitted for a purpose other than attacking credibility, Rule 608(b) is not a bar). Moreover, although copies of the letter-report in its original and altered form were shown to the witness, no Rule 608 violation occurred because the documents were not admitted or received in evidence. 882 F.2d at 1448-49.
 
 
 9
 Kuna argues cross-examination regarding the so-called Automatic Teller Machine ["ATM"] incident was beyond the scope of the direct examination and reversible error.
 
 
 10
 Kuna testified on direct examination regarding his movements at the parking lot. The cross examination related to Kuna's testimony on direct examination at his first trial, omitted from his direct testimony at his second trial, that he had approached an ATM at a bank at the parking lot to check his balance, but could not do so because the ATM was not part of the "Star System" which accepted credit cards from Kuna's bank. Thus, the cross examination concerned the same time, place, and general activity as the direct examination. Both related to whether Kuna's conduct at the parking lot was innocent or reflected countersurveillance by a participant in an on-going drug transaction.
 
 
 11
 Moreover, the cross examination "affect[ed] the credibility of the witness," since it concerned prior inconsistent testimony by Kuna regarding his activities at the lot.
 
 
 12
 Kuna argues it was error to introduce a photograph of the bank at the lot showing the Star System logo prominently displayed on the ATM. However, Kuna's attorney stated she had no objection to admission of the photograph. A previous objection, seventeen pages earlier in the transcript, went to the scope of the cross examination rather than to the introduction of the photograph.
 
 
 13
 Kuna objects to the admission of testimony by two expert witnesses that all plating operations produce waste. The testimony was offered to rebut Kuna's testimony that he would have no trouble getting a permit because his plating plant produced no waste. Kuna argues the evidence went solely to criminal propensity and thus violated Rule 404(b). However, the testimony of the experts was not "evidence of other crimes, wrongs, or acts."[2] The experts testified generally that in their expert opinions, all plating plants produce waste; they did not direct their testimony to Kuna's plant. In the alternative, Kuna argues admission of the testimony violated Rule 608(b). However, the testimony did not involve "specific instances of conduct of a witness."
 
 
 14
 Kuna argues that the Assistant United States Attorney's telephone call to the highway patrol following favorable character testimony in Kuna's first trial by Hanson, an employee of the highway patrol, led Hanson to decline to testify favorably in Hanson's second trial and thus deprived Kuna of his sixth amendment right to compulsory process and his fourteenth amendment right to due process of law.[3]
 
 
 15
 Substantial government interference with a defense witness's free and unhampered choice to testify violates due process. United States v. Little, 753 F.2d 1420, 1438 (9th Cir.1984). "Whether substantial government interference with a defense witness occurred is a factual determination to be made by the trial court. We review a district court's factual determination under the clearly erroneous standard." Id. at 1439 (internal citations omitted).
 
 
 16
 To maintain a charge of substantial government interference, Kuna would have had to show not only that the government should have foreseen Hanson's superiors would contact Hanson directly and Hanson would have a change of heart regarding his knowledge of Kuna's character, but also that the jury would be unable to reach a verdict and another trial would be required. We cannot say the court's finding that "the unfortunate consequences of [the] telephone call were not reasonably foreseeable by the government" was clearly erroneous.
 
 
 17
 Because we affirm the district court's finding that the government did not substantially interfere with Kuna's witness, we do not decide whether a harmless error-rule should apply, or whether introduction of juror affidavits violated Rule 606(b).
 
 
 18
 AFFIRMED.
 
 REINHARDT, Circuit Judge, dissenting:
 
 19
 I dissent. In my opinion, the government's "investigation" of California Highway Patrol (CHP) Officer Harold Hanson, who testified as a character witness for Kuna in the first trial but declined to do so in the second trial, constituted witness intimidation and violated Kuna's right to due process of law. Even if a harmless error rule applies to witness intimidation cases, the error clearly was not harmless. Accordingly, Kuna is entitled to reversal of his conviction.
 
 
 20
 "[S]ubstantial government interference with a defense witness's free and unhampered choice to testify amounts to a violation of due process." United States v. Little, 753 F.2d 1420, 1438 (9th Cir.1984) (citing, inter alia, Webb v. Texas, 409 U.S. 95, 97-98 (1972); Washington v. Texas, 388 U.S. 14, 19 (1967)). In Little, the court concluded that an investigatory phone call to the office of a defense witness did not amount to intimidation. Id. at 1440. Under the analysis developed in Little, however, the district court's conclusion that no misconduct occurred in this case is clearly erroneous.
 
 
 21
 Little focused on three factors in determining that an investigatory phone call to the offices of an expert witness for the defense did not constitute intimidation. First, we noted that investigation of trial witnesses is both permissible and necessary, and that the manner in which the investigation was conducted--the government agent's use of an assumed identity--was not misconduct. Id. Second, we found no evidence that the call was intended to intimidate the witness. Id. Finally, we noted, "although [the witness] testified that the call made him nervous, he never stated that he would not testify if called on surrebuttal." Id. Consideration of these factors in the context of the present case yields vastly different results.
 
 
 22
 The government is not prohibited from investigating a defense witness's possible involvement in criminal activity, but it may not do so overtly and without regard for any possible impact on an ongoing trial. The nature of the government's investigation of a defense witness is of critical importance in determining whether that investigation rises to the level of intimidation. In Little, IRS agents placed a call to the office of the defense expert, a law school professor and tax practitioner, to ascertain whether any prior relationship existed between the expert and the defendant. No reference was made to the ongoing trial, and there was no suggestion of any illegal activity on the part of the expert. Id. at 1439. By contrast, the phone call at issue here was made to Hanson's superiors, who were officials of a state law enforcement agency. The call directly related to Hanson's testimony on behalf of an accused drug dealer, and suggested Hanson's possible peripheral involvement, knowing or unknowing, in drug-related activities. The prosecutor's heavyhanded investigation of Hanson is a far cry from the inquiry conducted in Little.
 
 
 23
 The second Little factor, intent to intimidate, is closely related to the first in that it also requires the court to consider the investigative method employed. If anything, the evidence regarding the telephone call made by the IRS agent in Little indicates that the government took every precaution not to intimidate the witness. The agent who made the call used an assumed identity and made only carefully general inquiries regarding the relationship between the witness and the defendant. Id. In this case, however, it was clearly foreseeable that Hanson's superiors at the CHP would look askance at his testimony on behalf of an accused drug dealer. Moreover, no reference to Hanson's testimony was necessary to accomplish the professed purpose of the call. Had the government's only concern been Hanson's possible involvement in Kuna's alleged illegal activities, the prosecutor could have framed the call as a general inquiry and avoided any reference to the ongoing trial, and could have requested that the inquiry be kept secret from Hanson.
 
 
 24
 The fact that the jury was deliberating at the time of the prosecutor's telephone call does not change the analysis of the government's intent. Given the nature of the evidence presented at the first trial, the possibility of a hung jury was not insignificant. To arrive at an explanation for Kuna's presence in a car outside the restaurant where the drug deal occurred, the jury was required to weigh the word of Kuna, a respected local businessman, against that of his employee, an admitted deadbeat and drug dealer. The character testimony offered by Hanson, an experienced law enforcement officer, further enhanced Kuna's credibility. More important, a trial is not officially over until the jury has reached a verdict of guilt or innocence. The government should not be entitled to presume that the court's charge to the jury releases it from its prosecutorial obligation to ensure that the defendant receives a fair trial consistent with due process.
 
 
 25
 No reason has been given, and none is conceivable, as to why the prosecution could not have waited until after the jury returned a verdict to begin its investigation with the CHP. The record is extremely unclear as to the government's reasons for investigating whether Hanson had run license plate checks for Kuna. The government states in its brief that it asked the CHP to determine whether Hanson had ever run checks on any of the individuals involved in the case that had just been tried, but it does not state whether it suspected Hanson of involvement in drug-related activity or whether it was merely concerned with ferreting out possible violations of CHP policy. If the former, no testimony regarding a possible CHP contact named "Howard" or "Howie" had been offered at trial; therefore, waiting a few extra days would not have jeopardized the investigation. (As I noted above, it is also unusual, to say the least, that the Assistant United States Attorney did not request that the CHP keep the inquiry a secret from Hanson.) If the latter, it is even more unclear why the prosecution could not have waited until the jury--or a second jury--had reached a verdict. Although such information would have been useful for impeachment purposes, the trial had ended by the time the call was made.
 
 
 26
 Finally, the prosecutor's phone call to the CHP had the effect of depriving Kuna completely of Hanson's testimony. Hanson stated unequivocally and under oath that he no longer felt able to testify to Kuna's honesty. When government conduct intended to result in the intimidation of a defense witness deprives the defendant of that witness's testimony, the courts of appeal have consistently found denial of due process. United States v. Morrison, 535 F.2d 223, 226-28 (3d Cir.1976) (defense witness who had indicated her intent to testify repeatedly took the fifth amendment after repeated messages from the prosecutor that she would be prosecuted on drug charges and for perjury); United States v. Goodwin, 625 F.2d 693, 703 (5th Cir.1980) (defense witnesses refused to testify after prison warden threatened that their remaining time in prison would be harder if they did so); United States v. Hammond, 598 F.2d 1008, 1012-15 (5th Cir.1979) (defense witness refused to continue testifying after FBI agent approached him during recess and threatened to make trouble for him in connection with his indictment in Colorado for a state crime); United States v. Thomas, 488 F.2d 334, 335-36 (6th Cir.1973) (per curiam) (defense witness refused to testify after secret service agent threatened him with prosecution for misprision of a felony). The result should be no different even when it cannot be said with complete certainty whether the intimidation was intentional or only clearly foreseeable. Given the government's obligation to guarantee each criminal defendant a fair trial, intentional and foreseeable intimidation are equally unacceptable.
 
 
 27
 In summary, under the facts of this case, Hanson's change of heart was a clearly foreseeable consequence of the prosecutor's telephone call to his superiors. In light of the strength of Hanson's character testimony and Kuna's standing in the community, it was also foreseeable that a second trial might be required. The test for substantial government interference is therefore met.
 
 
 28
 United States v. Hasting, 461 U.S. 499 (1983), appears to require harmless error analysis in all cases involving prosecutorial misconduct. Id. at 509 ("Since Chapman [v. California, 386 U.S. 18 (1967) ], the Court has consistently made clear that it is the duty of the reviewing court to consider the trial record as a whole and to ignore errors that are harmless, including most constitutional violations.") (citations omitted). Even if the harmless error rule applies in cases involving witness intimidation, however, reversal of Kuna's conviction would be required. Under Chapman, when constitutional error is alleged, the government must demonstrate that the error was harmless beyond a reasonable doubt in order to avoid reversal. 386 U.S. at 24. It cannot do so here. The fact that there were other differences between the first and second trials that may have contributed to the difference in outcomes is irrelevant for purposes of the Chapman test. The question that the court must consider is whether it is possible to conclude beyond a reasonable doubt that the Hanson's refusal to testify in the second trial did not prejudice Kuna. In light of the fact that the jury in the first trial voted 10 to 2 in favor of acquittal, such a conclusion is inconceivable. Because the government's error clearly was not harmless, I would reverse Kuna's conviction.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Kuna also objects, on the same relevancy grounds, to the admission of evidence that he defaulted on certain business loans in the summer between his arrest and the second trial. For the reasons discussed above, we conclude the district court did not abuse its discretion in holding this evidence to be relevant as well
 
 
 [2]
 Kuna also objects to the prosecutor asking Kuna whether he hauled his waste off to Mexico. Kuna's objection was sustained; although the question itself was improper, the error was harmless. In view of the evidence of Kuna's activities on the day of the arrest, it is highly improbable the question itself could have affected the verdict
 
 
 [3]
 The right to present witnesses to establish a defense is found in the sixth amendment's right to compulsory process. Washington v. Texas, 388 U.S. 14, 17 (1967). It is also a fundamental aspect of due process of law. Id. at 19. We address the claim under the due process clause rather than the 6th amendment. See United States v. Hammond, 598 F.2d 1008, 1012 n. 3 (5th Cir.1979)