THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DAVID
STEADING, Defendant-Appellant.

Second District No. 2—98—1100

Opinion filed December 3, 1999.

Kathleen T. Zellner and Franco N. Carone, both of Kathleen T. Zellner & Associates, of Naperville, for appellant.

Joseph E. Birkett, State's Attorney, of Wheaton (Martin P. Moltz, of State's Attorneys Appellate Prosecutor's Office, of counsel), and Mary Ellen Dienes, of Northfield, for the People.

PRESIDING JUSTICE BOWMAN delivered the opinion of the court:

Defendant, David Steading, was charged by indictment with two counts of possession of a stolen vehicle (625 ILCS 4—103(a)(1) (West 1994)). The State elected to prosecute defendant on only one count, and a jury convicted him of that offense. The trial court sentenced defendant to 10 years' imprisonment in the Illinois Department of Corrections. Defendant appeals his conviction and argues that (1) he was deprived of the effective assistance of counsel because his trial attorney failed to request a continuance to secure the testimony of his only witness; (2) the trial court erroneously denied his posttrial motion for a new trial when he presented evidence that his sole witness refused to testify because he was intimidated by a federal agent; and (3) the State did not prove him guilty beyond a reasonable doubt. For the reasons that follow, we affirm the trial court's judgment.

Sharon McCalla, office manager for Woodfield Chevrolet in Schaumburg, testified at trial that on December 11, 1994, a Chevrolet K-2500 pickup truck with a plow attached was stolen from the Woodfield Chevrolet lot. The truck was a trade-in that the dealership was using to plow its lot.

Mike Pszotka, who was in charge of building maintenance at Wood-

field Chevrolet, testified that December 11, 1994, was a Sunday and the dealership was closed. He went by the dealership at about 3 p.m. that day to check on a construction crew that was remodeling the showroom. Pszotka discovered that the pickup truck was missing, along with the ignition key that was supposed to be kept in a locked room inside the dealership. Pszotka testified that the dealership had a video surveillance system consisting of eight cameras in different locations. He reviewed the videotape for that day, which showed a person wearing brown coveralls walking toward the truck. Only the back of the person was visible. Pszotka confirmed that the truck was used to plow the lot and identified a photograph of the stolen truck.

On January 5, 1995, Officer Bernard Keegan of the Naperville police department observed defendant driving a red Chevrolet pickup truck at the intersection of Stearns and Route 59 in Du Page County. At the time, Keegan was a member of the auto theft task force and was engaged in surveillance of another individual. Defendant pulled into a gas station at the corner of Stearns and Route 59 and had a conversation for about 10 minutes with the person who was under surveillance. Keegan and the other officers with him then decided to initiate a surveillance on defendant.

Defendant left the gas station in the pickup truck and drove south on Route 59. Keegan and the other officers followed him to an apartment complex in North Aurora. There, defendant parked the truck in the parking lot for the apartment complex and entered the complex. Keegan then observed that the truck was a Chevrolet 2500 turbo diesel pickup truck. It had a plow attachment on the front and a sliding rear window, also referred to as a split window. There were graphics on the hood indicating that the truck had a 6.5-liter turbo diesel engine. The officers were not able to see the vehicle identification number (VIN) because there were papers covering the dashboard where the VIN plate was located. The officers did not enter the truck or speak to defendant. Keegan's report of January 5, 1995, indicated only that the truck was a newer model Chevy pickup with the license plate number 6223CW.

Keegan further testified that he saw defendant again on August 4, 1995, at the Du Page County courthouse in Wheaton and followed him to the Kane County courthouse in Geneva. At that time defendant was driving a different vehicle. Keegan had a conversation with defendant and asked him about two sets of key rings that were found in his car. Keegan went through the keys one by one and asked defendant what each key was for. There was one key that Keegan recognized as an ignition key for a General Motors vehicle. He asked defendant what that key was, and defendant responded that it was a key he used to start tractors at work. Keegan returned all of the keys to defendant.

Keegan stated that, after finishing his conversation with defendant, he went to the apartment complex in Des Plaines where defendant lived. In the complex's parking lot, he found the same pickup truck that defendant had been driving on January 5. Keegan knew it was the same truck because it had all of the same characteristics as the truck he had seen before, including the plow attachment, the graphics indicating the 6.5-liter turbo diesel engine, and the sliding back window. Again, the truck's VIN plate was covered by papers so it was not visible.

The truck was seized and towed to an impound lot in Du Page County. There, Master Sergeant Eric Norwood approached Keegan with a General Motors ignition key. Norwood told Keegan that the key was the same one Keegan had questioned defendant about earlier. Keegan tried the key in the truck's ignition and it worked. Du Page County Sheriff's Deputy Robert Quiroz testified that he removed the General Motors key from defendant's key ring and gave it to Norwood, who then gave it to Keegan.

When the truck was impounded, it had different license plates than it did on January 5. It also had a "Sea Doo" bumper sticker covering a sticker that said "Woodfield Chevrolet." The parties stipulated that documents retrieved from the truck contained Steading's fingerprints.

James Wuokko testified for the State in exchange for an agreement that he would not be prosecuted for his involvement with the stolen pickup truck. Wuokko testified that he had been arrested 37 times, had 10 felony convictions, and was incarcerated 3 times between 1980 and 1987. He used to steal cars, but at the time of trial he was no longer involved in that activity. Wuokko testified that he did not steal the pickup truck.

Wuokko testified that he had known defendant since 1979. He met with defendant on two occasions in 1995 to discuss the truck. On the first occasion, defendant drove the truck to the motel where Wuokko was staying. He and Wuokko drove around together in the truck. Defendant asked Wuokko if he could locate some "paperwork" that would fit the truck in order to conceal its identity. The paperwork would include a new title, door sticker, glove box sticker, VIN plate and license plates. Wuokko testified that he told defendant he could not provide the paperwork because the truck was brand new.

Wuokko testified that he met with defendant a second time because defendant wanted his help in covering up the dealership sticker on the truck. The two of them found a "Sea Doo" sticker in the trunk of defendant's Honda Civic. Wuokko, who used to work in a body shop, cleaned the area where they were going to put the sticker so it would adhere properly and affixed the sticker over the dealership sticker.

On cross-examination, Wuokko testified that license plates registered to him were on the pickup truck when it was impounded. He said that he had given those plates to defendant and a person named Bill Brock. The statement Wuokko gave to the Du Page County sheriff indicated that Wuokko gave the plates to Bill Brock.

Defendant did not present any witnesses in his defense. In his posttrial motion, he alleged that he had subpoenaed Virgil Wilson to testify on his behalf but that Wilson had refused to testify after being intimidated by a federal agent. A hearing took place on defendant's posttrial motion on July 24, 1998. Wilson testified that he received a subpoena to testify at defendant's trial and was prepared to testify on the last day of the trial. When Wilson exited the elevator on the fourth floor of the courthouse, a man approached him and said he was from the "Department of Tobacco and Firearms" and that he had questions for Wilson pertaining to some other cases involving defendant. Wilson stated that the man advised him to talk to him before Wilson "got in trouble for legal matters with Mr. Steading." After speaking with this man, Wilson told defendant's attorney that he no longer wished to testify. Wilson stated that if he had testified he would have said that he and James Wuokko had stolen the subject truck.

On cross-examination, Wilson testified that the man who approached him did not threaten him or say anything else to him. The man gave Wilson his business card and told him to get in touch with him. On redirect, Wilson stated that the man stayed with him the entire time he was in the hallway. After hearing the evidence, the trial court denied defendant's posttrial motion.

■ Defendant's first argument on appeal is that he was denied the effective assistance of counsel because of his trial attorney's failure to request a continuance when Wilson, the only defense witness, advised that he would not testify. We note initially that a defendant is entitled to competent legal assistance, not perfect representation. *People v. Markiewicz*, 246 Ill. App. 3d 31, 48 (1993). There is a strong presumption that a defendant's attorney performed competently. *People v. Wright*, 149 Ill. 2d 36, 46 (1992). To prevail on a claim of ineffective assistance of counsel, a defendant must establish both that (1) his attorney's performance fell below an objective standard of reasonableness, and (2) the deficient performance was so prejudicial as to deny defendant his constitutional right to a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687, 80 L. Ed. 2d 674, 693, 104 S. Ct. 2052, 2064 (1984); *People v. Albanese*, 104 Ill. 2d 504, 526 (1984). In reviewing a defendant's claims, if we determine that the defendant suffered no prejudice from the alleged deficiencies, then we need not decide whether defense counsel's performance was deficient. *Markiewicz*, 246 Ill. App. 3d at 48.

The State asserts that the decision not to request a continuance was reasonable because the witness was present but simply refused to testify. The State also argues that defendant was not prejudiced because Wilson's testimony would not have affected the outcome of the trial. We address the latter argument first, because it is dispositive of this issue.

Defendant was prosecuted for unlawful possession of a stolen vehicle. The State correctly points out that the record does not indicate that Wilson's testimony would have exonerated defendant. Wilson indicated at the hearing on the posttrial motion only that he would have testified that he and Wuokko stole the truck. Defendant claims that Wilson would have testified that defendant did not know the truck was stolen, but there is no testimony in the record to that effect. Testimony that defendant did not steal the truck would not have exonerated him from the offense of possession of a stolen vehicle.

Defendant maintains that Wilson's testimony would have "substantially impeached Wuokko's credibility and veracity" because Wuokko testified that he did not steal the truck. According to defendant, it follows that if Wuokko's testimony that he did not steal the truck had been impeached, the jury would not have believed his testimony that defendant knew that the truck was stolen. While such a scenario is conceivable, the State aptly notes that Wuokko's testimony pertaining to defendant's knowledge was not necessary to convict him.

█ █ Under section 4—103(a) of the Illinois Vehicle Code (625 ILCS 5/4—103(a) (West 1994)), the jury could have inferred knowledge that the truck was stolen.

Section 4—103(a) provides:
> "It may be inferred *** that a person exercising exclusive unexplained possession over a stolen or converted vehicle or an essential part of a stolen or converted vehicle has knowledge that such vehicle or essential part is stolen or converted, regardless of whether the date on which such vehicle or essential part was stolen is recent or remote." 625 ILCS 5/4—103(a) (West 1994).

The jury was instructed that it could, but was not required to, infer knowledge that the vehicle was stolen from exclusive unexplained possession of the vehicle. The State presented sufficient evidence to support the presumption. Officer Keegan testified that when he saw the truck defendant was the only person in it. Defendant also had the key to the truck, and the truck was parked outside his apartment building when it was seized. Defendant offered no evidence indicating that he did not have exclusive possession or explaining why he had possession of a stolen truck. Consequently, even if Wilson had impeached Wuok-

ko's testimony, there was still sufficient evidence to support the jury's finding of guilt. Therefore, defendant's claim of ineffective assistance of counsel fails because any alleged deficiency in his trial counsel's performance did not affect the outcome of the trial.

 Next, defendant argues that he should have been granted a new trial because governmental interference with his witness, Wilson, deprived him of his due process rights. We will not reverse a trial court's decision on a motion for a new trial absent an abuse of discretion. *People v. Chatmon*, 236 Ill. App. 3d 913, 934 (1992). One of the fundamental due process rights is the right to present witnesses in one's defense. *Washington v. Texas*, 388 U.S. 14, 19, 18 L. Ed. 2d 1019, 1023, 93 S. Ct. 1920, 1923 (1967). That right is violated if the State or the court exerts improper influence over a defendant's witness and causes the witness not to testify. *People v. Mancilla*, 250 Ill. App. 3d 353, 358 (1993), citing *Webb v. Texas*, 409 U.S. 95, 98, 34 L. Ed. 2d 330, 333, 93 S. Ct. 351, 353 (1972).

██ Defendant acknowledges that the cases he cited in support of his argument do not involve the same factual scenario as the case before us. See *Webb*, 409 U.S. 95, 34 L. Ed. 2d 330, 93 S. Ct. 351; *People v. Muschio*, 278 Ill. App. 3d 525 (1996); *Mancilla*, 250 Ill. App. 3d 353; *People v. Clarke*, 245 Ill. App. 3d 99 (1993). In all of these cases, the defendants alleged that either the prosecutor or the court tried to improperly influence a defense witness. Here, defendant alleges improper influence from an unknown person who worked for the "Department of Tobacco and Firearms" (presumably the Bureau of Alcohol, Tobacco and Firearms (ATF)), a federal agency. Defendant concedes that there is no evidence in the record connecting the federal agent to the prosecutor or the court, but he argues that there is a "strong inference" that the prosecutor directed the federal agent to confront Wilson. An inference is "a conclusion as to the existence of a particular fact reached by considering other facts in the usual course of human reasoning." M. Graham, Cleary & Graham's Handbook of Illinois Evidence § 302.2, at 93 (7th ed. 1999), citing *Ohio Building Safety Vault Co. v. Industrial Board*, 277 Ill. 96 (1917). A fact cannot be inferred when a contrary fact could be inferred with equal certainty from the same evidence. *Leavitt v. Farwell Tower Ltd. Partnership*, 252 Ill. App. 3d 260, 268 (1993). Here, there are no facts in the record to support an inference that the federal agent approached Wilson at the prosecutor's request. It is equally likely that the federal agent had no connection to the prosecutor and was conducting his own investigation. Therefore, we conclude that the record does not support the inference that defendant advocates.

Defendant does cite two federal cases, *United States v. Hammond*,

598 F.2d 1008 (5th Cir. 1979), and *United States v. Thomas*, 488 F.2d 334 (6th Cir. 1973), that involved alleged intimidation by an agent of the Federal Bureau of Investigation (FBI) and a secret service agent, respectively. We find those cases distinguishable also. In *Thomas*, the court found that the secret service agent was acting at the behest of the prosecutor. *Thomas*, 488 F.2d at 335. In *Hammond*, the defendant argued that the "government" intimidated his witnesses. *Hammond*, 598 F.2d at 1012. Clearly, an FBI agent is an agent of the federal government, whereas an ATF agent is not an agent of the State of Illinois. *Hammond* did not address a situation analogous to the one before us.

Our research has revealed no Illinois case in which a court has found a due process violation because of improper influence from a federal agent. While we do not foreclose the possibility that such a ruling might be appropriate under different circumstances, we decline to extend the scope of the existing law under the facts presented.

Even assuming, *arguendo*, that we would extend the scope of the law, defendant has not met the requirements of the three-pronged test for determining whether a defendant has been improperly deprived of his due process right to present witnesses set forth in *People v. King*, 154 Ill. 2d 217, 224-25 (1993). In *King*, the court held that a defendant must demonstrate that (1) the admonitions the defense witness received were somehow improper; (2) the allegedly improper admonitions caused the witness not to testify; and (3) the lack of the witness's testimony had a prejudicial effect on the outcome of the trial. *King*, 154 Ill. 2d at 224-25.

Looking at the nature of the federal agent's statements to Wilson, it is a close question whether they were improper. The federal agent did not directly threaten Wilson or instruct him not to testify. He suggested that Wilson speak with him before he got himself into trouble for matters related to defendant and gave Wilson his business card. Wilson did not explain what he thought the federal agent meant when he made that statement. We find that the federal agent's statement was ambiguous. Unlike the statements that other courts have found improper, it did not threaten or strongly imply that dire consequences would result from Wilson's testimony. For these reasons, we conclude that the federal agent's statement was not improper.

With respect to the second prong of the test, it does appear that the federal agent's statement caused Wilson not to testify. Wilson had appeared in court and was prepared to testify but changed his mind after speaking to the federal agent. However, the supreme court has held that causation alone is not enough to violate *Webb*. *King*, 154 Ill. 2d at 224. A violation occurs when the statements to the witness are

improper. *King*, 154 Ill. 2d at 224. We have determined that the agent's statement to Wilson was not improper.

As for the third prong of the test, we have already discussed that, even though Wilson was to be defendant's sole witness, his testimony was not such that it would have exculpated defendant. Even if Wilson's testimony had the desired effect of discrediting Wuokko, there still would have been sufficient evidence to find defendant guilty. Defendant failed to show that the federal agent improperly influenced Wilson. Consequently, defendant has not presented a compelling reason for this court to hold that statements by an unidentified federal agent with no connection to the prosecutor or the State deprived defendant of his right to due process. We conclude that the trial court did not abuse its discretion in denying defendant's motion for a new trial.

■ Defendant's last argument is that the State did not prove him guilty beyond a reasonable doubt. Specifically, he asserts that the State did not sufficiently prove that he knew that the truck was stolen and that the offense occurred in Du Page County. We disagree.

The applicable standard of review is whether any rational trier of fact could have found that the elements of the offense were proved beyond a reasonable doubt, viewing the evidence in the light most favorable to the prosecution. *People v. Brown*, 169 Ill. 2d 132, 152 (1996). Section 4—103(a) of the Illinois Vehicle Code provides:

"It is a violation of this Chapter for:

(1) A person not entitled to the possession of a vehicle or essential part of a vehicle to receive, possess, conceal, sell, dispose, or transfer it, knowing it to have been stolen or converted ***." 625 ILCS 5/4—103(a)(1) (West 1994).

Thus, the State was required to establish beyond a reasonable doubt that defendant had possession of a vehicle to which he was not entitled and that he knew that the vehicle was stolen or converted. Also, at the time defendant was indicted, venue was a material allegation that the State had the burden to prove. See *People v. Adams*, 161 Ill. 2d 333 (1994); but see 720 ILCS 5/1—6(a) (West 1998) (providing that, effective August 11, 1995, "[t]he State is not required to prove during trial that the alleged offense occurred in any particular county in this State"). Consequently, the trial court instructed the jury that the State had to prove beyond a reasonable doubt that defendant committed the offense of unlawful possession of a stolen motor vehicle in Du Page County.

We have already determined that the State presented sufficient evidence to satisfy the elements of section 4—103(a) beyond a reasonable doubt. The uncontradicted testimony of Officer Keegan showed

that defendant had unexplained and exclusive possession of the truck, which supported the inference that defendant knew that the truck was stolen.

Keegan's testimony also established that venue in Du Page County was proper. He stated that on January 5, 1995, the date listed in the indictment, he saw defendant driving the subject truck at the intersection of Stearns and Route 59 in Du Page County. Defendant argues that Keegan's report of January 5 did not include any description of the truck's distinguishing characteristics, implying that the truck Keegan saw on January 5 was not the same truck that was seized on August 4, 1995. However, Keegan testified that he had no doubt in his mind that the truck that was seized from defendant's apartment complex parking lot was the same truck he saw defendant driving on January 5. Contrary to defendant's assertion, the fact that the truck was stolen and recovered in Cook County is not relevant to the question of whether he knowingly possessed a stolen vehicle in Du Page County. For these reasons, we conclude that there was sufficient evidence upon which the jury could find that the State proved all elements of the offense, including venue, beyond a reasonable doubt.

Accordingly, the judgment of the circuit court of Du Page County is affirmed.

Affirmed.

GEIGER and GALASSO, JJ., concur.