THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DANNY HAMMOND, Defendant-Appellant.

First District (6th Division)   No. 1—87—2741

Opinion filed April 16, 1990.

Randolph N. Stone, Public Defender, of Chicago (Elizabeth Burke, Assistant Public Defender, of counsel), for appellant.

Cecil A. Partee, State's Attorney, of Chicago (Inge Fryklund, Paula Carstensen, and Nancy Nolan Colletti, Assistant State's Attorneys, of counsel), for the People.

JUSTICE EGAN delivered the opinion of the court:

This case centers upon a search warrant calling for the seizure of a backhoe and some snowmobiles. Approximately 11 officers participated in the search of the premises alleged to be the residence of the defendant, Danny Hammond. They searched for about five hours and seized a backhoe, eight snowmobiles and several hundred other items; one officer guessed that 1,000 items were seized. The backhoe, some of the snowmobiles and several of the other items seized were later identified as having been stolen.

The defendant was indicted on 10 counts of grand theft. Each count alleged theft of a specific item of property; one count involved a backhoe; two counts involved snowmobiles; and seven other counts involved other items seized.

The defendant filed a motion to suppress all items which were the subject of the separate counts of the indictment. The judge suppressed one of the items; he denied the motion as to the other items;

and the State dismissed the count which alleged the theft of the suppressed item. A jury found the defendant guilty on the remaining nine counts of the indictment; he was sentenced to probation for 30 months.

The defendant first contends that the judge erred in denying the motion to suppress. He argues that the search warrant lacked the required specificity; that it did not allege facts which would support a finding of probable cause; and that the officers exceeded the authority of the warrant.

The complaint for the search warrant was dated November 19, 1985, and was based on the affidavit of Sergeant Anthony Murray of the Chicago Heights police department in which he recited in substance the following:

On November 12, 1985, he had a conversation with a reliable informant who told Murray he had purchased stolen merchandise from Danny Hammond, whom the informant described. Hammond had been buying stolen merchandise and storing it on his property located at the "northeast corner of State and Sauk Trail, Cook County, Illinois." On November 11, 1985, the informant sold miscellaneous power tools to Hammond that had been stolen in a burglary. While the informant was at Hammond's residence he saw a yellow John Deere backhoe and four to six snowmobiles which were stolen in two separate incidents. The snowmobiles were stolen from Peotone, Illinois, and were sold to Hammond in the middle of October. The backhoe was stolen from Prairie State College at the end of October, driven to Hammond's residence and sold to him. The snowmobiles and backhoe were stored on Hammond's property.

Murray's affidavit also alleged that he had "confirmed [the] informant's information" by telephoning the chief of the Peotone policy. Murray "confirmed the theft of the John Deere backhoe with the Chicago Heights police report number 85—4436." The complaint asked for issuance of a warrant to seize "a Model JD 500—C John Deere wheel loader backhoe with Diesel Engine No. 297383 and any stolen snowmobiles taken in a theft from Peotone, Illinois on 15 October 1985 from Union 76 in Peotone, Illinois."

At the outset, it is appropriate to note that the defendant's argument that the warrant lacked specificity is restricted only to the description of "any stolen snowmobiles taken in a theft from Peotone, Illinois on 15 October 1985 from Union 76 in Peotone." The defendant concedes that the description of the backhoe was sufficient.

■ We need not decide whether the warrant was sufficiently specific with respect to the snowmobiles since we have determined

they were properly seized because the officers were properly on the premises, the snowmobiles were in "plain view" and the officers had sufficient information that would justify their seizure. As a general rule officers executing a search warrant are restricted to seizing only those items which are identified with sufficient specificity in the warrant; an exception to the general rule exists when items not mentioned in the warrant are in plain view and when the officers reasonably believe those items constitute evidence of criminal activity. *People v. Stewart* (1984), 105 Ill. 2d 22, 473 N.E.2d 840.

Sergeant Murray testified that he had a telephone conversation with Chief Bogart of the Peotone police on November 19, 1985. They discussed the theft of snowmobiles. He did not recall whether Bogart described the snowmobiles which had been stolen. Bogart told Murray that the snowmobiles were stolen from a Union 76 gas station in Peotone.

Detective Faioni testified that he spoke to Murray about the conversation Murray had with Bogart. Murray reported that Bogart said that two red Scorpion snowmobiles had been stolen in the burglary.

When Murray executed the warrant on the defendant, Murray went to the rear yard in the area where the informant had told him that the backhoe was located. The warrant itself commanded that the officers were to search "a white frame house and gray storage barns on said property." There were several structures on the property, and Murray located the snowmobiles in a shed. The vehicle identification numbers of the snowmobiles had been scraped off or peeled off. They were Scorpion snowmobiles. It is our judgment that the police possessed sufficient information to justify a seizure of the snowmobiles.

The trial judge, in explaining the reasons for his findings, expressed the view that the items, which were the subject of the other counts of the indictment, were also properly seized under the "Plain View" exception other than a snowmobile trailer which he suppressed. The defendant does not maintain that the trial judge's reliance on the "Plain View" exception was wrong, and he does not answer the State's reliance on the exception in this court. It would unduly lengthen this opinion to discuss each of the other six items which were seized and were introduced to support the findings on those six counts. Suffice it to say that the record supports the judge's finding that those items were properly seized under the "Plain View" exception. For example, Officer Faioni saw a yellow scuba tank. He knew that a yellow scuba tank had been taken in a garage burglary one week before. Murray saw a four-wheel Suzuki

all-terrain vehicle which matched the description of a vehicle which had been taken in a burglary in Chicago Heights. The vehicle identification number had been defaced.

The defendant also argues that the "facts" recited in the search warrant did not support a finding of probable cause by the judge who issued the warrant. The defendant maintains that the warrant could have been more specific; for example, he says, the affidavit could have alleged that the informant had been inside the single-family dwelling and that he had seen the backhoe and snowmobiles on the premises. Our first answer is that the test is not whether the affidavit could have been stronger; the test is whether it was sufficient. We hold that it was.

■ Our second answer is that the affidavit does allege that the informant observed the backhoe and snowmobile on the premises. Murray's affidavit alleged that he had known the informant for two years; that the informant had provided him with information on two separate occasions and in both instances stolen property had been recovered resulting in at least one arrest; the informant had previously sold stolen merchandise to the defendant; the defendant had been buying stolen merchandise and storing the merchandise on his property; the informant sold miscellaneous power tools to the defendant which were stolen in a burglary; *while at Hammond's residence the informant observed a yellow John Deere backhoe along with four to six snowmobiles* which the informant advised were stolen in two separate incidents. Murray received independent corroboration of the informant's information by checking the records of his own police department and through his conversation with the chief of the Peotone police department. We judge that the affidavit, considered as a whole, more than adequately establishes a fair probability that evidence of a crime would be found on the described premises. See *People v. Jones* (1985), 105 Ill. 2d 342, 475 N.E.2d 832.

■ The defendant's last attack on the search warrant is based on his claim that the police engaged in a general search and that the trial judge found that the police had gone "too far." The trial judge did, in fact, make that observation. He suppressed one of the items seized which the police could not justify under the "Plain View" exception. Once again, we agree with the trial judge's analysis of the evidence and his findings. None of the other items seized after the police went "too far" was the subject of any of the counts for which the defendant was charged other than the item which was suppressed. Lawfully seized evidence will not be excluded because of a subsequent unlawful search for other property. *People v. Crowder*

(1981), 99 Ill. App. 3d 500, 425 N.E.2d 994.

For these reasons, we judge that the order denying the defendant's motion to suppress was proper.

The defendant next contends that error occurred when the judge struck the testimony of a defense witness. Edward Benson testified on behalf of the defendant that he had resided at a State Street address in South Chicago Heights for two years. He identified a State exhibit, a diagram of the property where the defendant was arrested. Benson said that he and eight other people lived on the property and that a number of other people used the other buildings on the property. He identified photographs of a backhoe which he had previously seen parked behind the shed next to the building in which he lived. He had seen a person known as Randy Bach operating the backhoe on the property. He never saw the defendant operate the backhoe.

On cross-examination Benson testified that Bach did not live on the property on November 19, 1985, the day the defendant was arrested and the property searched. Benson lived above the area marked "garage" on the diagram, and he had access to the garage and sheds on the property. He denied that he stored any items in the attic of the house but said that he stored some items on the porch and that the cost of storing those items was included in his rent. The cross-examination was then terminated at the request of the assistant State's Attorney in order that the witness might be advised of his fifth amendment right against self-incrimination.

The trial judge appointed an assistant public defender to inform the witness of his constitutional rights concerning "what items, if any, he stores in certain area of the premises." Following a recess, the assistant public defender told the judge that he had spoken to Benson and that it was the assistant public defender's belief that, if questioning were to resume "relative to a building and access to and control of it," Benson would assert his privilege against self-incrimination. In response to the judge's question, Benson said that he would "take the fifth amendment" if he was asked any more questions.

The defendant's attorney told the judge that the witness should assert his privilege in the presence of the jury. During subsequent colloquy between the court and counsel, the defendant's attorney, for the first time, expressed the view that the questions asked by the State were "beyond the scope" of the direct examination. The judge said that "that objection is not before the court." The jury was recalled, and the witness said that he would invoke his fifth amendment privilege and refuse to answer any questions. The judge then

instructed the jury to disregard any testimony given by the witness.

█ The defendant first asserts that the error occurred when the State's Attorney's cross-examination allegedly exceeded the scope of direct examination. That argument must be rejected; first, because no timely objection was made to the State's questions at the time they were asked (*People v. Nearn* (1988), 178 Ill. App. 3d 480, 533 N.E.2d 509) and second, because the State's questions were within the bounds of the direct examination.

█ The defendant also contends that the judge erred when he appointed the public defender to advise Benson of his constitutional rights. However, the defendant's attorney made no objection when the assistant State's Attorney asked the judge to advise the witness of his "fifth amendment rights." In fact, when the judge said that he would appoint the public defender, the defendant's attorney said, "Fine." Therefore, the argument that the appointment of the public defender was improper is waived. Moreover, it is not improper for a State's Attorney to suggest appointment of counsel for a witness nor for a judge to appoint counsel to advise a witness of his privilege against self-incrimination. *People v. Pantoja* (1976), 35 Ill. App. 3d 375, 342 N.E.2d 110.

The defendant's last contention with respect to Benson's testimony is his assertion that the court erred in striking the testimony. He does not cite any case nor does he answer the State's argument which includes citation to *People v. Cedillo* (1986), 142 Ill. App. 3d 849, 492 N.E.2d 227.

In *Cedillo*, a prosecutor interviewed a codefendant who had pleaded guilty and who was listed as a prospective defense witness. After the interview the prosecutor informed the court that the witness' version of the offense appeared to be contrary to his stipulation at the plea proceedings. The prosecutor said that if the codefendant testified as he had indicated, he would be charged with perjury. The court appointed the public defender to advise the witness, and the witness indicated that, if called to testify, he would invoke his right against self-incrimination. Over the defendant's objection, the court barred the witness from testifying. The appellate court held that the trial court did not err in barring the witness from testifying once he indicated that he intended to invoke his privilege against self-incrimination.

█ In our judgment, *Cedillo* is analogous authority for the procedure followed in this case. We see no material difference insofar as the defendant is concerned between striking testimony and barring testimony beforehand. Indeed, in this instance, the witness' invoca-

tion of his constitutional privilege inured to the benefit of the defendant. The jury could have concluded that Benson, rather than the defendant, was guilty of theft. (See *People v. Miller* (1980), 79 Ill. 2d 454, 404 N.E.2d 199.) We find no reversible error either in the procedure followed or in the order striking Benson's testimony.

The defendant next contends that the judge erred in granting the State's motion *in limine*, preventing the defendant from introducing three cancelled checks. The named payee on each check was Richard Bach; the drawer was purportedly the defendant. The checks were drawn on an account at the Chicago Heights National Bank in the name of "Hammond Enterprises, 201 East Sauk Trail, South Chicago Heights, IL." Two of the checks contained a notation indicating that the amount paid was for "backhoe work" and contained the address "3125 State." Two checks were dated October 22, 1985, and the other check was dated October 23, 1985. Each check was endorsed by a "Richard Bach."

At the hearing on the motion *in limine*, the defendant's attorney argued that the checks were being offered to show that a defense witness would testify that she recognized the signatures, received the checks from the defendant and gave them to Bach. The State said that it would not object to the witness testifying that she received the checks from the defendant and delivered them to Bach, but the State would object to the defendant putting the checks themselves before the jury.

■■ The defendant argued that the checks were being offered to show that the defendant was not in possession of the stolen backhoe which had been recovered on the property. From the defendant's offer of proof it is clear that the checks were offered to show that Richard Bach had used the backhoe while working at 3125 South State Street, which a witness would later identify as the address of a building on the property other than the one in which the defendant was arrested. This evidence was offered for the purpose of establishing a fact—that Bach exercised dominion and control over the backhoe on the premises where it was recovered. The evidence, therefore, was hearsay, as the State maintained, and was properly excluded.

The judge denied admission of the checks on the additional ground that the proof that the backhoe was used by Bach, who did not live on the property, was irrelevant. The judge did not understand why the defendant was seeking to introduce the checks. Neither do we. As we will show later, the defendant was trying to convince the jury that he did not live at 201 East Sauk Trail. Checks he signed on an account of "Hammond Enterprises, 201 East Sauk

Trail" would be strong corroboration of the other evidence the State introduced to establish that the defendant did live at 201 East Sauk Trail.

The defendant's last contention is that the State failed to prove his guilt beyond a reasonable doubt. The defendant's argument on this point is confusing. He argues that the evidence was insufficient because the court allegedly admitted improper evidence under the search warrant and because the court excluded the testimony of Benson and the checks which were purportedly given to Bach. For reasons we have already explained, there is no merit to this argument.

The defendant does not argue the sufficiency of the evidence to establish recent, exclusive possession of stolen property; rather, he makes only a passing reference to the fact that at the time of the offense other people allegedly lived on the premises. Although the argument could be deemed waived, we believe we should address the sufficiency of the evidence to establish that the defendant had recent, exclusive possession of the stolen property.

■■ In order to support a finding of theft based on recent, exclusive possession of stolen property, it is sufficient to show that the defendant possessed the property jointly with others. (*People v. Harris* (1972), 53 Ill. 2d 83, 288 N.E.2d 873.) The required possession may be constructive and may be proved by circumstantial evidence. *People v. Songer* (1977), 48 Ill. App. 3d 743, 362 N.E.2d 1127.

■■ After he was arrested while wearing pajamas, the defendant told the police he wanted to "go to *his* bedroom to put on some clothes." (Emphasis added.) The police recovered three letters addressed to the defendant from a dresser in the bedroom. One was addressed to 201 East Sauk Trail, and two were addressed to 901 East Sauk Trail. The police also recovered a stolen automatic pistol on the floor near the foot of the bed. All of the stolen property, with the exception of the all-terrain vehicle, the snowmobiles and the backhoe, was recovered from the building in which the defendant was arrested. Murray identified the defendant's sister and his invalid 93-year-old father as the only other persons in the house from which the stolen property was recovered.

Betty Hammond, the defendant's sister, testified that only she and her father lived in the house where the defendant was arrested and that three or four other families lived in another house. Benson lived over the garage. Other people boarded horses in the sheds. She said that the defendant was visiting their sick father the day the police arrived. She also testified that the proper address for the house

was 3137 State Street. On cross-examination she admitted that 201 East Sauk Trail was the "old address."

Barbara Gray testified that she lived with the defendant at another address and that the defendant left that day to visit his sick father.

Larry Barker, a mailman, testified in rebuttal that he delivered mail to a mailbox on the southwest corner of the intersection of Sauk Trail and State Street. The house was on the northwest corner. In that mailbox, Barker delivered mail addressed to 201 East Sauk Trail, 901 East Sauk Trail, 3125 State Street and 3137 State Street. Some of the mail was addressed to the defendant. The 900 block of East Sauk Trail is a farmer's field on the northeast corner of Sauk Trail and Cottage Grove. Although the record is confusing, the reasonable inference is that 901 East Sauk Trail was a mistaken address and that 201 East Sauk Trail was at least one of the correct addresses for the house in which the defendant was arrested.

The credibility of Betty Hammond and Barbara Gray was for the jury to determine. The jury obviously rejected their testimony and it is not our right to substitute our judgment for that of the jury. Betty Hammond's testimony that others lived on other parts of the property does not explain the presence of six separate items of stolen property recovered from the house to which the other persons did not have access. From all the circumstances, the jury could conclude beyond a reasonable doubt that the defendant lived in the house where he was arrested, that he had at least constructive possession of the stolen property and that he had at least joint possession of the stolen property. We judge that the evidence was sufficient to establish the defendant's guilt beyond a reasonable doubt.

For these reasons, the judgment of the circuit court is affirmed.

Judgment affirmed.

LaPORTA, P.J., and McNAMARA, J., concur.