(No. 73686.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. ARTHUR KING, Appellee.

*Opinion filed January 28, 1993.*

McMORROW and NICKELS, JJ., took no part.

Roland W. Burris, Attorney General, of Springfield, and Jack O'Malley, State's Attorney, of Chicago (Terence M. Madsen, Assistant Attorney General, of Chicago, and Renee Goldfarb, Bennett E. Kaplan, Randall Roberts and Cory J. Pollack, Assistant State's Attorneys, of counsel), for the People.

Rita A. Fry, Public Defender, of Chicago (Stephen L. Richards, Assistant Public Defender, of counsel), for appellee.

CHIEF JUSTICE MILLER delivered the opinion of the court:

Defendant, Arthur King, was charged in the circuit court of Cook County with armed robbery in violation of section 18—2(a) of the Criminal Code of 1961 (Ill. Rev. Stat. 1985, ch. 38, par. 18—2(a)). On October 5, 1988, a jury returned a verdict finding the defendant guilty of the charge.

On November 4, 1988, defendant filed a motion for a new trial based upon newly discovered evidence. This motion was accompanied by the sworn affidavit of Dwayne Cheers, the alleged accomplice of defendant. Cheers stated in the affidavit that he committed the robbery in question with an individual named Thomas Matthis and not the defendant. The trial court denied defendant's motion for a new trial. Defendant was thereafter sentenced to a term of 12 years in the Illinois Department of Corrections.

Defendant appealed his conviction to the appellate court. First, defendant asserted that he was denied due process by admonitions the trial judge delivered to Cheers during defendant's trial. The admonitions allegedly intimidated Cheers into asserting his fifth amendment privilege rather than testifying for defendant. Second, defendant asserted that the trial judge should have

granted his motion for a new trial based on Cheers' affidavit.

The appellate court reversed and remanded the cause for a new trial. (228 Ill. App. 3d 519.) The appellate court held that the trial court violated the defendant's right to present evidence in his defense by its pretestimony admonitions to Cheers. Because of its holding, the appellate court did not reach the issue of whether defendant's motion for a new trial should have been granted. The State requested leave to appeal to this court and we granted the request. (134 Ill. 2d R. 315.) We now affirm the appellate court.

## Facts

Defendant was charged with the robbery of Gwendolyn Harris. Harris testified that on the evening of September 20, 1987, she was approached by two men in the stairwell of an apartment building located at 511 East Browning in Chicago. One of the men allegedly held a gun to her head while the other took jewelry, cash, and drugs from her. Harris testified that the scene of the robbery was well lit, and that she got a good look at her assailants.

Several days after the robbery, Harris was informed by a friend that a woman known as Mary Porter had been seen wearing some of the jewelry stolen from Harris. The friend also informed Harris that Porter had a boyfriend named "Coon," and that he was one of the men who had robbed Harris. Harris relayed this information to Detective Edward Kevin, the officer in charge of the Harris robbery investigation.

Detective Kevin testified that he subsequently went to Porter's apartment. After identifying himself as a police officer, Detective Kevin was allowed inside the apartment by defendant, who identified himself as "Coon." Detective Kevin arrested defendant. Porter,

who was present in the apartment at the time of the arrest, allegedly produced several pieces of jewelry and voluntarily turned them over to Detective Kevin. The jewelry was identified as some of the jewelry that had been taken from Harris in the robbery. Harris later picked Cheers and defendant out of separate lineups as the men who had robbed her.

Porter testified that she had purchased the jewelry in question from Cheers for $10. According to Porter, Cheers approached Porter outside her apartment building and offered to sell her the jewelry. Porter also testified that Detective Kevin recovered the jewelry through an unauthorized search of Porter's apartment.

Prior to defendant's trial, Cheers agreed to plead guilty to armed robbery in exchange for the trial judge's promise to sentence him to eight years' imprisonment in the Illinois Department of Corrections. As foundation for the trial court's acceptance of his guilty plea, Cheers stipulated that if his case had gone to trial, Harris would have testified that Cheers and defendant were the men who had robbed her.

The trial judge entered judgment on Cheers' conviction, but withheld sentencing at the request of the State. The judge explained to Cheers that withholding sentencing was "just a tactical move." Cheers responded, "Yes, sir, but that would make me, me and Arthur King, we ain't connected with nothing." The judge responded, "Well, I understand that, but I just want to, so that the state doesn't have that fear."

During defendant's trial, but prior to Cheers' sentencing, defendant attempted to call Cheers as a witness. The following discussion transpired:

"THE COURT: Let me just advise you of this, Mr. Cheers. When you entered a plea of guilty, the state read certain facts into the record. And your attorney agreed,

at that time, that those facts would be the facts that would take place at any trial.

And among those facts, as I remember and my notes indicate, is that when you committed this offense for which you entered a plea of guilty, you committed it with—Mr. King.

MR. CHEERS: No.

THE COURT: Okay. Wait a second, I'm just telling you what my memory of the plea was.

Under those circumstances, that was the understanding that I had at the time that the pleas was given. And at the time that I offered you 8 years.

Now, I'm not telling you what to do and I'm not advising you what to do. I just wanted you to know that if you do testify and you testify in a manner that I believe is perjurious, which would be not the truth, I would, on my own motion, vacate the plea of guilty. You'd then be as if the plea had never taken place. And we'd probably have to have a trial in connection with that matter.

However, if you testified in this matter and testify in what I believe is a truthful manner, I would not vacate that plea and I would allow you then to be sentenced to the 8 years that we previously agreed upon.

Now, I'm just—I want to know that when you pled guilty, the facts that were referred to in front of me, and which you listened to after which you heard those facts, you agreed to pled [sic] guilty, those facts included the fact that you committed the crime with Mr. King.

* * *

MR. CHEERS: To my knowledge, that I was pleading guilty to the crime, true enough. I understand that. But I had stipulated that it was—King have nothing to do with me.

THE COURT: I didn't hear any such stipulation. If there was such a stipulation, I didn't hear it. But I just wanted to let you know just what the facts are as far as I can see it. Whether or not in your mind you had a different thought, I don't know, because I can't read your mind. I'm just telling you what I know and what the facts are as far as I can remember.

Now, we can always verify that because I'm going to order a transcript of the plea that you entered and the facts that were recited into the record at the time of the plea on the 15 of September.

Mr. Kload is going to call you as a witness on behalf of the—of the defendant. You have a right to testify if you wish to. You also have a right, because you still are in jeopardy, so to speak, some things can happen to you which could effect [sic] your freedom, et.cetera [sic], because you have not been convicted. You have a right to exercise your Fifty [sic] Amendment right and not testify for fear that what ever you might testify to could be used against you. I have to tell you that.

And I also would like to know if you're going to testify on behalf of Mr. King or are you going to assert your right as your counsel has advised you to?

MR. HELIS: Judge, before he answers that question may I consult with Mr. Cheers?

THE COURT: Sure. Absolutely.

\* \* \*

THE COURT: I'm going to ask you now, Mr. Cheers, are you going to testify in this matter?

MR. CHEERS: No. I plead the Fifth."

Cheers did not testify at defendant's trial. Defendant was subsequently convicted of the armed robbery of Harris.

Following Cheers' sentencing and defendant's conviction, defendant's attorney obtained an affidavit from Cheers. In the affidavit, Cheers swore he committed the armed robbery of Harris with an individual known as Thomas Matthis. Cheers also swore that the lighting was poor in the stairwell where he and Matthis robbed Harris. Finally, Cheers stated that when he pled guilty, he did not say that defendant had committed the robbery with him. Cheers further stated that he would have testified at defendant's trial, but he was afraid that if he did testify, the trial court would not sentence him to the

eight years' imprisonment for which he had plea bargained.

## Discussion

In reversing defendant's conviction, the appellate court relied on *Webb v. Texas* (1972), 409 U.S. 95, 34 L. Ed. 2d 330, 93 S. Ct. 351. In *Webb*, the defendant was charged with burglary. After the State had rested its case, Webb called his only witness, Leslie Max Mills, who had a prior criminal record and was then serving a prison sentence. (*Webb*, 409 U.S. at 95, 34 L. Ed. 2d at 332, 93 S. Ct. at 352.) Prior to his testimony, the trial judge admonished Mills as follows:

> " 'If you take the witness stand and lie under oath, the Court will personally see that your case goes to the grand jury and you will be indicted for perjury and the liklihood [*sic*] is that you would get convicted of perjury and that it would be stacked onto what you have already got, so that is the matter you have got to make up your mind on. If you get on the witness stand and lie, it is probably going to mean several years and at least more time that you are going to have to serve. It will also be held against you in the penitentiary when you're up for parole and the Court wants you to thoroughly understand the chances you're taking by getting on that witness stand under oath. You may tell the truth and if you do, that is all right, but if you lie you can get into real trouble. The court wants you to know that. You don't owe anybody anything to testify and it must be done freely and voluntarily and with the thorough understanding that you know the hazard you are taking.' " (*Webb*, 409 U.S. at 95-96, 34 L. Ed. 2d at 332, 93 S. Ct. at 352.)

The Court held that "the judge's threatening remarks *** effectively drove [the] witness off the stand, and thus deprived the petitioner of due process of law under the Fourteenth Amendment." (*Webb*, 409 U.S. at 98, 34

L. Ed. 2d at 333, 93 S. Ct. at 353.) The appellate court found the present case analogous to *Webb*. We agree.

In *Webb*, the Court focused on the effect that the judge's admonitions had on the potential witness. A relevant issue in the present case, therefore, is what effect the statements made by the trial judge had on Cheers.

We believe that the trial judge's admonitions could have caused Cheers to assert his fifth amendment right against self-incrimination. Causation alone, however, is not enough to violate the rule announced in *Webb*. A judge may admonish a potential witness although the judge's comments cause the potential witness not to testify. See, *e.g., United States v. Zelker* (2d Cir. 1972), 468 F.2d 159; *State v. Schaub* (1976), 46 Ohio St. 2d 25, 346 N.E.2d 295.

For a trial judge's admonitions to a potential witness to violate the due process rights of the accused, the admonitions must be somehow improper. For example, the Court in *Webb* characterized the trial judge's admonition as "unnecessarily strong" and "threatening." *Webb*, 409 U.S. at 98, 34 L. Ed. 2d at 333, 93 S. Ct. at 353.

In the present case, the trial judge misstated the facts when he admonished Cheers. The trial judge was incorrect that Cheers stipulated to defendant's participation in the robbery of Harris. Cheers stipulated that Harris would testify defendant was one of the men who robbed her. Cheers did not stipulate that he would testify defendant was one of the men who robbed Harris. In fact, Cheers clearly stated that he had no connection with defendant. Again at defendant's trial, Cheers disclaimed having stipulated to any connection with the defendant. The trial judge directly contradicted Cheers' recollection. Although the trial judge offered to check the record to verify the contents of Cheers' stipulation, this would not have been done until after Cheers had testified.

After having stated his misunderstanding of the facts to Cheers, the trial judge threatened to revoke Cheers' plea if he testified in a way the trial judge believed to be false. The trial judge explained that this could lead to Cheers' being sentenced to a term other than eight years. While the trial judge could not have revoked Cheers' plea, he could have withdrawn his offer to sentence Cheers to eight years' imprisonment. (See 134 Ill. 2d R. 402.) In his affidavit, Cheers states that he would have testified but for the fear of losing his eight-year sentence.

When determining whether a trial judge's admonitions to a potential witness are proper, the facts and circumstances of the case must be considered. In the present case, the trial judge mistakenly stated that Cheers had stipulated to. defendant's participation in Harris' robbery. He then threatened to revoke Cheers' plea if Cheers testified falsely. The implication of the trial judge's admonitions was that Cheers might not receive an eight-year sentence if he testified for defendant. The trial judge forced Cheers to choose between not testifying and taking a chance that the trial judge would withdraw his offer to sentence Cheers to eight years' imprisonment. The trial judge's mistaken admonitions to Cheers, therefore, were improper and could have caused Cheers not to testify.

Although the trial judge may have improperly deterred Cheers from testifying, defendant was not deprived of due process if Cheers' testimony would have had no effect on defendant's verdict. The Court in *Webb* noted that the trial judge's admonitions were aimed at the defendant's sole witness. (*Webb*, 409 U.S. at 98, 34 L. Ed. 2d at 333, 93 S. Ct. at 353.) The availability of additional witnesses is relevant to whether the defendant was prejudiced. Where a defendant's sole witness is improperly prevented from testifying, defendant suffers a

much greater harm than where a relatively unimportant witness among many is improperly prevented from testifying.

The State did not argue that the trial judge's admonitions, if improper, failed to prejudice defendant. We find the record before us sufficient to support a finding that defendant was prejudiced by Cheers' failure to testify. Cheers' testimony could have directly contradicted Harris' testimony. Cheers had no apparent motive to testify in favor of defendant, as he had already pled guilty to involvement in the crime. The addition of exculpatory testimony by Cheers could have influenced the jury's verdict.

## Conclusion

The trial judge's admonitions to Cheers were improper and could have caused Cheers to assert his fifth amendment privilege. Defendant was also prejudiced by the absence of Cheers' testimony. Accordingly, we hold defendant was denied due process of law under the fourteenth amendment of the United States Constitution. Accordingly, the appellate court decision is affirmed. Because of our holding, we need not consider whether Cheers' affidavit constitutes newly discovered evidence.

*Affirmed.*

JUSTICES McMORROW and NICKELS took no part in the consideration or decision of this case.