THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. GUALBERTO MANCILLA, Defendant-Appellant.

First District (2nd Division)   No. 1—91—0934

Opinion filed June 29, 1993.—Modified on denial of rehearing August 17, 1993.

Michael J. Pelletier and James E. Chadd, both of State Appellate Defender's Office, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Lou Anne Corey, and Lisa Travis, Assistant State's Attorneys, of counsel), for the People.

JUSTICE HARTMAN delivered the opinion of the court:

Defendant, Gualberto Mancilla, appeals his jury conviction of aggravated criminal sexual assault (Ill. Rev. Stat. 1989, ch. 38, par. 12—14(b)(1) (now 720 ILCS 5/12—14(b)(1) (West 1992))), for which he was sentenced to eight years' imprisonment. Defendant raises as issues for review whether (1) the State proved him guilty beyond a reasonable doubt, (2) the State threatened a witness causing her to refuse to testify, (3) the circuit court erred in admitting a mother's hearsay testimony under section 115—10 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1991, ch. 38, par. 115—10 (now 725 ILCS 5/115—10 (West 1992))), (4) the circuit court improperly denied admission of his hearsay statement, (5) the circuit court properly limited his cross-examination of the victim, (6) he was denied a fair trial by the prosecutor's closing argument, and (7) he received effective assistance of counsel.

The State alleged that defendant sexually assaulted a five-year-old girl, E.R. Her mother, N.R., testified that on July 19, 1990, she was at home with E.R. and her four-year-old son. The family lived on an upper floor of a small apartment building. There was a porch directly outside of the kitchen, with stairs leading from the porch to a small backyard.

At 10:15 a.m., N.R. bathed the children and dressed E.R. in a blouse and shorts. E.R. went into the backyard to find her cat. She was gone for 3½ to 4½ minutes. N.R. met E.R. halfway down the stairs. E.R. was frightened and told her mother that "the bad man had touched my vagina." E.R.'s shorts were "a little crooked." N.R. asked her if the man was still there, and E.R. said he had left. N.R. took E.R. into the backyard and asked her where it happened. E.R. brought N.R. underneath the basketball hoop in the backyard.

While in the backyard, E.R. saw defendant in the first-floor apartment through an open door and told her mother he was the offender. N.R. took E.R. home. N.R. returned to the first-floor apartment and, in an attempt to detain defendant, a television cable employee, she requested him to repair her cable. N.R. left and telephoned 911. She returned to the first-floor apartment where defendant agreed to repair her cable.

N.R. walked towards the front of the apartment building when the police arrived. She identified defendant to the officers and went to get E.R., who told them what happened and asserted that defendant was the offender.

E.R. testified that she went into the backyard to get her cat when defendant came from "inside of a house pretending to fix the cable." Defendant pulled her onto his lap and asked her if that was her "dog" and basketball hoop. She answered affirmatively. Defendant touched her vagina with his finger on the inside of her shorts. He put his "whole hand" into her shorts and "touched it through my two little holes." E.R. then went upstairs and told her mother.

Dr. Sharon Ahart of Mount Sinai Hospital testified that she examined the victim on July 19, 1990. She observed superficial abrasions and tenderness on the external labia of the vagina, abrasions with some bleeding on the internal labia of the vagina, evidence of trauma to the hymen, and a rectal spasm that indicated some trauma to "the muscle around there." Dr. Ahart was of the opinion that the victim had been acutely sexually assaulted earlier that day. The victim told Dr. Ahart that the cable man had touched her vaginal area with his hands and had put something into her buttocks. The victim also told her that no one else had ever touched her vagina or buttocks.

The jury returned a guilty verdict. Defendant retained a new attorney, who moved for a new trial based upon the purported newly discovered evidence of statements made by Eva Cruz, an occurrence witness. The State objected to the motion for a new trial, claiming that Cruz' statements were not newly discovered evidence, and told

the court that Cruz was referred to in the police reports, was interviewed by State's Attorneys, and was present on the day of trial.

New defense counsel told the court that he interviewed Cruz following the trial, and she would testify that she was outside with defendant and never saw him touch the victim. An assistant State's Attorney responded that such testimony would be contrary to the statements Cruz gave her and the police. The court observed that such evidence "certainly slipped" defendant's former counsel and the State, but questioned whether it was newly discovered. Defense counsel asserted that Cruz told him she had never spoken with defendant's former counsel. The State requested that Cruz be appointed counsel and advised of the consequences of perjury.

Cruz was called before the court. Through an interpreter, the State informed Cruz that her proposed testimony was inconsistent with her earlier statements that she did not know what defendant was doing while he was outside her apartment. The State again requested that Cruz be advised of the consequences of perjury and mentioned her immigration status. The State further cautioned that Cruz' testimony could expose her to criminal prosecution for the obstruction of justice.

The court offered Cruz appointed counsel. Cruz said she desired appointed counsel if her testimony would hurt her immigration status. After speaking privately with Cruz, Cruz' counsel informed the court: Cruz was a resident alien from Mexico; Cruz had spoken through an interpreter with the police, an assistant State's Attorney, and an unidentified investigator; Cruz had been asked a few days earlier by defendant's wife and brother to testify on his behalf; and Cruz was unaware at that time that the trial had been completed. Cruz' counsel said he told Cruz that her proposed testimony directly contradicted her earlier statements to police and the assistant State's Attorney. Cruz decided not to testify. A major factor in her decision was concern for her immigration status. Her decision may have been based partly on the possible exposure to criminal charges for perjury and obstruction of justice. The court allowed Cruz to withdraw as a witness.

Defense counsel filed an affidavit which stated the following. He spoke with Cruz on February 22, 1991, through an interpreter. Cruz told him: (1) she lives in the rear basement apartment at the address involved; (2) at 10:50 a.m. on July 19, 1990, she heard a knock and let defendant, a cable employee, into her apartment through the back door; (3) defendant looked at the television and then went to his truck to get a cable box; (4) Cruz walked out through her back door and

watched defendant go to his truck and return one to two minutes later with tools, a ladder, and a cable box; (5) as defendant returned, Cruz saw E.R. coming downstairs; (6) defendant entered Cruz' living room and installed the cable box, which took approximately three minutes; (7) defendant then left her apartment to set up his ladder; (8) Cruz went outside and watched defendant climb the ladder, during which time E.R. was outside; (9) the police arrived shortly thereafter and arrested defendant; (10) when Cruz asked N.R. why defendant was being arrested, N.R. told her to mind her own business; (11) defendant was never out of her sight from the time he arrived at her back door until the time police arrested him, and Cruz never saw him touch or harm E.R.; (12) Cruz did not notice if E.R.'s pants were twisted; (13) when Cruz spoke with police, N.R.'s brother acted as the interpreter; (14) Cruz never spoke with defendant's trial counsel; (15) Cruz went to court because she received a subpoena, but she never spoke to "the Assistant" about the facts of the case and was told to go home; (16) Cruz had not been bribed, threatened, or promised anything in return for her testimony; (17) Cruz had never seen defendant before July 19, 1990; (18) Cruz knew N.R. and E.R. as upstairs tenants; and (19) Cruz is not related to, nor friends with, nor dislikes defendant, E.R., or N.R.

I

■ Defendant initially contends that the State failed to prove him guilty beyond a reasonable doubt because the State's version of events is inherently unbelievable and contrary to universal human experience.

Defendant maintains it is unbelievable that he would suddenly stop his work as a cable employee, assault a stranger in clear public view within 4½ minutes, and then calmly return to work. In addition, defendant submits that the five-year-old victim was confused when she identified him as the offender. He properly notes that where the State's evidence is improbable, unconvincing, and contrary to human experience, a court will find the defendant has not been proved guilty beyond a reasonable doubt. (*People v. Dawson* (1961), 22 Ill. 2d 260, 265, 174 N.E.2d 817.) Defendant attempts to analogize his case with *Dawson* (22 Ill. 2d 260, 174 N.E.2d 817), *People v. Coulson* (1958), 13 Ill. 2d 290, 149 N.E.2d 96, *People v. Wright* (1986), 147 Ill. App. 3d 302, 497 N.E.2d 1261, and *People v. Anderson* (1974), 20 Ill. App. 3d 840, 314 N.E.2d 651; however, they are inapposite.

A criminal conviction will not be set aside unless the evidence is so improbable or unsatisfactory that it creates a reasonable doubt of

defendant's guilt. (*People v. Collins* (1985), 106 Ill. 2d 237, 261, 478 N.E.2d 267.) The relevant inquiry is whether the evidence, viewed in the light most favorable to the State, would support any rational trier of fact in finding that the essential elements of the crime had been proved beyond a reasonable doubt. (*Collins*, 106 Ill. 2d at 261.) A reviewing court may not substitute its judgment for that of the trier of fact on questions involving the weight of the evidence or the credibility of witnesses. *People v. Manion* (1977), 67 Ill. 2d 564, 578, 367 N.E.2d 1313.

Here, the jury heard the victim herself testify that defendant touched her "two little holes." The mother testified that the victim told her the bad man had touched her vagina. Dr. Ahart testified that she examined the victim and concluded she had been acutely sexually assaulted on the day in question. Moreover, the victim told her the cable man had touched her vaginal area and buttocks. In view of the foregoing evidence, we conclude that defendant was proved guilty beyond a reasonable doubt.

## II

■ Defendant claims he is entitled to a new trial based upon the newly discovered evidence of Cruz' statements. Defendant further asserts, as a related issue, that he was denied due process because the State threatened Cruz causing her to refuse to testify.

Here, the circuit court never ruled whether Cruz' statements were newly discovered evidence because Cruz declined to testify. We proceed to defendant's claim that the State violated his due process rights by threatening Cruz causing her not to testify.

The State first counters that defendant has waived review of this issue by failing to object at trial and raise the issue in a post-trial motion. (See *People v. Enoch* (1988), 122 Ill. 2d 176, 186, 522 N.E.2d 1124.) We address the issue on its merits because the actions in question occurred after the trial during a hearing on a post-trial motion for a new trial.

A fundamental element of due process is the right of an accused to present witnesses in his or her own defense. (*Washington v. Texas* (1967), 388 U.S. 14, 19, 18 L. Ed. 2d 1019, 1023, 87 S. Ct. 1920, 1923.) That fundamental right is violated if the State or the court exerts improper influence on defense witnesses causing them not to testify. *Webb v. Texas* (1972), 409 U.S. 95, 98, 34 L. Ed. 2d 330, 333, 93 S. Ct. 351, 353.

Defendant appropriately analogizes this case with *Webb* and *People v. King* (1992), 228 Ill. App. 3d 519, 593 N.E.2d 694, *aff'd* (1993),

154 Ill. 2d 217, 608 N.E.2d 877. In *Webb*, the Court reversed a defendant's conviction because the trial judge drove a prospective defense witness from the stand by telling him that if he lied he would be prosecuted, convicted for perjury, and have to serve more time in prison. (*Webb*, 409 U.S. at 97, 34 L. Ed. 2d at 333, 93 S. Ct. at 353.) Similarly, in *King*, an appellate court reversed and remanded a defendant's conviction where the circuit judge drove a prospective defense witness from the stand by threatening to revoke an earlier plea bargain made before that court if it believed the witness was lying. (*King*, 228 Ill. App. 3d at 525.) Our supreme court recently affirmed the reversal. *King*, 154 Ill. 2d 217, 608 N.E.2d 877.

The State maintains that it did not threaten Cruz or intimidate her into not testifying. The State correctly points out that it is not improper for a prosecutor to advise prospective witnesses of the penalties for perjury or to voice disbelief about the veracity of their proposed testimony. (*People v. Eubank* (1970), 46 Ill. 2d 383, 392, 263 N.E.2d 869.) Neither is it inappropriate for a prosecutor to suggest a witness be appointed counsel to be advised of the privilege against self-incrimination. (*People v. Hammond* (1990), 196 Ill. App. 3d 986, 993, 554 N.E.2d 534; *People v. Pantoja* (1976), 35 Ill. App. 3d 375, 380, 342 N.E.2d 110.) The State analogizes the present case with *People v. Cedillo* (1986), 142 Ill. App. 3d 849, 492 N.E.2d 227. There, a prospective witness/codefendant invoked his privilege against self-incrimination after the prosecutor told him he would be prosecuted for perjury if he testified contrary to a stipulation he made at his own guilty plea proceedings. (*Cedillo*, 142 Ill. App. 3d at 850-51.) The court held that the prosecutor's conduct was not improper.

Our supreme court in *King* recently suggested a two-prong test for establishing a violation of a defendant's right to present witnesses in his or her own behalf: (1) whether the admonitions actually caused the prospective witness to decline to testify, and (2) whether the admonitions are "somehow improper." (*King*, 154 Ill. 2d at 224.) The facts and circumstances of each case must be considered. *King*, 154 Ill. 2d at 225.

As to the first prong, we observe that the record expressly states Cruz decided not to testify because she was concerned with her immigration status. Her concern of criminal prosecution may also have played a part. We conclude that the State's statements actually caused Cruz to decline to testify.

The second prong, whether the prosecutor's statements are "somehow improper" (*King*, 154 Ill. 2d at 224), next must be determined. The critical distinction between the cases cited by defendant

and those cited by the State lies in the determination of whether the prosecutor's warnings concerning perjury and possible criminal prosecution are used as instruments of intimidation. (See *People v. McKiness* (1982), 105 Ill. App. 3d 92, 98-101, 433 N.E.2d 1146 (and cases cited therein); Annot., 88 A.L.R.4th 388, 396 (1991).) Here, Cruz, a resident alien from Mexico, appeared in court and was prepared to testify. The State requested that Cruz be advised of the consequences of perjury. Cruz was called before the court. Through an interpreter, a prosecutor told Cruz her proposed testimony was inconsistent with her earlier statements. The prosecutor requested that Cruz be advised of the consequences of perjury and specifically mentioned her immigration status. Then the prosecutor cautioned that Cruz' testimony could expose her to criminal prosecution for the obstruction of justice. Although it was possible that the State could have charged and convicted Cruz of perjury (Ill. Rev. Stat. 1991, ch. 38, par. 32—2 (now 720 ILCS 5/32—2 (West 1992)); Ill. Rev. Stat. 1991, ch. 101, par. 5 (now 5 ILCS 255/5 (West 1992))) and obstructing justice (Ill. Rev. Stat. 1991, ch. 38, par. 31—4 (now 720 ILCS 5/31—4 (West 1992))), convictions which may have subjected Cruz to deportation (8 U.S.C. §1251(2)(A) (1992)), we find it highly unlikely (1) that the State would have pursued such charges, and (2) if it had, that it would have obtained a conviction against Cruz. The State would have had to prove that Cruz knowingly gave a false statement. (See Ill. Rev. Stat. 1991, ch. 38, par. 32—2; ch. 101, par. 5; ch. 38, par. 31—4.) The only indications Cruz was lying were statements Cruz allegedly made to police and the assistant State's Attorney through interpreters. Cruz had not signed a sworn statement or testified to the contrary of her proffered testimony. Moreover, Cruz apparently had no motive to lie as she and defendant are complete strangers who briefly met while he repaired her cable. The proper method to challenge Cruz' proffered testimony in the face of her alleged contrary statements would be to subject her to impeachment at trial, not to subject her to a fear of deportation. Under the circumstances of this case, we find that the State's repeated statements concerning criminal prosecution and the mention of Cruz' immigration status were not given in a paternal manner, but rather were intended to intimidate Cruz causing her to refuse to testify. We therefore conclude that such statements were improper.

The defendant must also prove prejudice to warrant reversal. (*King*, 154 Ill. 2d at 225-26.) A relevant factor is whether additional witnesses are available to the defendant. (*King*, 154 Ill. 2d at 226.) Here, only Cruz could provide defendant with a potential alibi. We find that defendant was prejudiced.

For the foregoing reasons, we reverse and remand for a new trial. (See *King*, 154 Ill. 2d at 226.) Given this disposition, we need not address defendant's remaining contentions. In the interest of judicial economy, however, we direct the State upon retrial to take note of our holding in *People v. Mitchell* (1992), 228 Ill. App. 3d 917, 930-31, 593 N.E.2d 882, *aff'd in pertinent part* (1993), 155 Ill. 2d 344, 350, that it is error in a jury trial to admit into evidence, pursuant to section 115—10 (Ill. Rev. Stat. 1991, ch. 38, par. 115—10 (now 725 ILCS 5/115—10 (West 1992))), testimony of a child's out-of-court statement without conducting the proper hearing.

Reversed and remanded.

McCORMICK, P.J., and SCARIANO, J., concur.