THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. NICOLA MUSCHIO, Defendant-Appellant.

First District (3rd Division)   No. 1—92—3364

Opinion filed March 20, 1996.

Richard M. Beuke & Associates, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb and William John Healy, Assistant State's Attorneys, of counsel), for the People.

JUSTICE CERDA delivered the opinion of the court:

Following a jury trial, defendant, Nicola Muschio, was charged with the delivery of a controlled substance (720 ILCS 570/401(a)(2)(B) (West 1992)) (more than 100 but less than 400 grams of cocaine) and was sentenced to 21 years' imprisonment. On appeal, defendant asserts that (1) the State improperly intimidated and threatened a crucial defense witness so that he did not testify; (2) the State's closing argument remarks about other crimes evidence was improper; and (3) his 21-year sentence was excessive. For the following reasons, we reverse and remand for a new trial.

Illinois State Police Officer Melinda Pharis testified that she was involved in undercover surveillance on April 9, 1990, when she met with Peter Studencki at the Lincolnwood Hyatt Hotel at 4:30 p.m. in an arranged meeting. Pharis had previously bought cocaine from Studencki on March 12, 1990, and April 5, 1990, and planned to buy 10 ounces of cocaine on April 9, 1990. On the prior occasions, the cocaine was packaged in a clear plastic bag inside a Marlboro cigarette pack.

During the hour Pharis and Studencki spoke at the hotel bar, Studencki used a public telephone twice. One time, Pharis accompanied him. She heard Studencki ask for "Nick," then say to her, "my source." When Studencki finished the call, he told Pharis that he was going to meet Nick, later identified as defendant, at Shooters Pub on Harlem Avenue in Chicago and then would return to the Hyatt with the cocaine. Studencki left the hotel around 6 p.m.

At 7:20 p.m., Studencki returned. He and Pharis went to the parking lot, where Studencki said that he had the cocaine in his car but was afraid to complete the deal in the parking lot. Noticing cartons of Marlboro cigarettes on the seat of Studencki's car, Pharis agreed to accompany him in her car.

Pharis drove Studencki to the parking lot of Biasetti's Restaurant in the 4700 block of West Touhy Avenue in Chicago. After she parked,

Studencki handed her a cigarette carton with a single pack inside. Pharis opened the pack, but there were only cigarettes. When she asked where the cocaine was, Studencki said that he would give her the real package since he had not been arrested. He handed Pharis a Marlboro carton. Inside, Pharis saw white powder, so she gave Studencki $12,000, which was the agreed-upon price for the cocaine. Studencki grabbed the money and jumped out of the car as Pharis hit her arrest signal.

Des Plaines police officer Raphaele Tovar testified that he was in an undercover car outside the Lincolnwood Hyatt when he watched Studencki arrive at 4:24 p.m. and leave around 6 p.m.

Tovar followed Studencki and defendant to a Phillips 66 gas station where he saw Studencki get out of his car and walk over to the truck. After defendant handed Studencki two red and white packages that were the size of cigarette cartons, Studencki returned to his car and drove away. Tovar followed him to the Lincolnwood Hyatt, where he arrived at 7:20 p.m. Tovar then drove to Biasetti's parking lot, where he saw defendant drive into the parking lot and park his truck.

Des Plaines police officer Les Mustacchio testified that he saw Pharis speaking to Studencki at the Hyatt at 4:15 p.m. and saw Studencki make two phone calls, one where Pharis accompanied him. Shortly after 7 p.m., Mustacchio left the hotel and drove to Biasetti's parking lot, where he watched defendant drive into the parking lot in a black pick-up truck.

Mustacchio followed defendant into the restaurant, which was a small pizzeria with a take-out counter, a few booths, and tables. He ordered a Coca-Cola while he waited and watched the parking lot. After a minute, other customers left, leaving only the cook, Mustacchio, and defendant, who was pacing the floor.

At 7:25 p.m., Pharis drove into the parking lot with Studencki. Soon after, Studencki ran into the restaurant (after jumping out of Pharis' car) and approached defendant. Mustacchio saw Studencki pull money from under his coat and hand it to defendant, who took the money and put it inside his coat. Studencki and defendant then walked out of the restaurant where they were arrested. Twelve thousand dollars in cash was recovered from defendant. The serial numbers matched those of the prerecorded bills given to Pharis to buy the 10 ounces of cocaine from Studencki.

After defendant's motion for a directed verdict was denied, he and his business partner, Anthony Diligio, admitted that they met Studencki on April 9, 1990, at their office and at Biasetti's. They claimed, however, that they met to collect an overdue payment for an office remodeling job they had done for Studencki in January 1990.

Diligio, who owns a 1988 Ford black pick-up truck, testified that Studencki owed the business $3,000 for the remodeling job. On April 9, 1990, Studencki called the office around 5:30 p.m. to say he was coming to bring the money. A couple of minutes later, Studencki arrived, but did not pay his bill. Instead, he told defendant and Diligio to meet him at Biasetti's, at which time he would pay them. At Biasetti's, Diligio and defendant waited for Studencki. No one else was in the restaurant. When Studencki entered the restaurant, Diligio went to the rest room. When he came out, he saw a group of people jump Studencki and defendant outside the restaurant.

Defendant testified that he never arranged a narcotics sale with Studencki and he denied that Studencki had paid him $12,000. He also testified that he had $290 in cash when he was arrested.

The jury found defendant guilty of delivery of a controlled substance and the trial court sentenced him to 21 years' imprisonment.

On appeal, defendant asserts that he was denied his right to due process and to present witnesses because the State intimidated Studencki, a crucial defense witness, by threatening to file a motion to reconsider his sentence if he testified for defendant. Defendant argues that he was prejudiced because Studencki was a codefendant, an eyewitness with inside knowledge of what happened, and a person whose testimony would have established that defendant had no knowledge that Studencki had engaged in a previous narcotics transaction with Officer Pharis.

On May 28, 1992, Studencki pleaded guilty to the delivery of more than 100 but less than 400 grams of cocaine and was sentenced to seven years' imprisonment, which is two years less than the statutory sentencing range of 9 to 40 years. 720 ILCS 570/401(a)(2)(B) (West 1992). Studencki also pleaded guilty to two other narcotics transactions. After the State learned that Studencki was a potential witness in this case, the following occurred in court:

"[THE STATE]: I had notified Attorney Barry Shephard to be present. I am under the belief from both the sheriffs and counsel that they intend to call Mr. Peter Studencki. I notified Mr. Sheppard [Studencki's defense attorney] if that was true at this time I would be making an oral motion to reconsider the sentence your Honor gave him as it was an illegal sentence and I notified him to be present.

* * *

[THE STATE]: At this time the state would be renewing its motion to have your Honor reconsider an illegal sentence that was given earlier to a co-defendant on this case, one Peter Studencki.

His attorney at that time was Attorney Barry Sheppard and I have made numerous attempts to contact him.

THE COURT: Bring out Mr. Studencki.

THE SHERIFF: Okay, Judge.

(Mr. Studencki entered.)

THE COURT: Okay. We are here during the trial of Mr. Muschio. It is my understanding the State is making a motion to reconsider the sentence that was given to Mr. Studencki because it was an illegal sentence at the time that it was—that I gave it to him.

\* \* \*

[THE COURT:] Mr. Sheppard is here with Mr. Studencki.

MR. SHEPPARD: Good afternoon, your Honor. Barry Sheppard on behalf of the Defendant.

Judge, I have had occasion to speak with Mr. Studencki at length about his position in this matter. I believe, if I am correct, it is his position that he is not going to be testifying today.

Is that correct, Mr. Studencki?

MR. STUDENCKI: I don't want to do more time. I don't want to testify.

MR. SHEPPARD: It is my understanding that you are unwilling to testify and then claim the protection of the Fifth Amendment of the United States Constitution?

MR. STUDENCKI: Yes. In this case, yes, because I was tricked.

MR. SHEPPARD: Do I understand the Defense is, therefore, not going to adduce the testimony of Mr. Studencki?

[DEFENSE COUNSEL]: Well, Judge, I guess that is our position. We can't. If he is going to assert his Fifth Amendment privilege not to testify, how can we call him? We can't.

THE COURT: Then you are not going to, is that correct; that is what I understand, you are not going to call him as a witness?

\* \* \*

THE COURT: There is still the matter of the State's motion.

Do you want to keep that open?

[THE STATE]: Yes, I do, your Honor."

Following a lengthy discussion about the content of the State's oral motion, the State indicated that it would file a written motion. The trial court granted a continuance for the State to file that motion. The following exchange occurred:

"MR. SHEPPARD: And I understand it may or may not ultimately be filed actually. At this point there is nothing filed.

THE COURT: I guess that is something you have to ask the State because I mean I am not filing motions.

[DEFENSE COUNSEL]: My understanding, Judge, is that it may or may not be filed based upon whether or not Mr. Studencki testifies.

THE COURT: Well, then that is something you have to ask the State.

[DEFENSE COUNSEL]: Well, I am asking them right now.

THE COURT: Go ahead.

[DEFENSE COUNSEL]: I am asking them right now on the record.

THE COURT: Tuesday.

[DEFENSE COUNSEL]: Judge, can I have a response from the State's Attorney?

THE COURT: I don't know. Ask the State.

Go ahead and ask them and they will talk to you.

[THE STATE]: I intend to file a motion."

The State never filed that motion. As a result, Studencki's seven-year sentence remained intact.

The State argues that the prosecutor's remarks were innocent comments, not intimidation. We disagree.

■ A defendant's fundamental right to present witnesses in his or her own defense is violated if improper influence is exerted on defense witnesses causing them not to testify. *Webb v. Texas*, 409 U.S. 95, 98, 34 L. Ed. 2d 330, 333, 93 S. Ct. 351, 353 (1972); *Washington v. Texas*, 388 U.S. 14, 19, 18 L. Ed. 2d 1019, 1023, 87 S. Ct. 1920, 1923 (1967); *People v. King*, 154 Ill. 2d 217, 224, 608 N.E.2d 877 (1993). In this case, the State's comments indicate that Studencki would have been sentenced to additional time in prison if he had testified on behalf of defendant. By intimidating Studencki into not testifying, the State violated defendant's right to present witnesses in his own defense. *Webb v. Texas*, 409 U.S. at 98, 34 L. Ed. 2d at 333, 93 S. Ct. at 353; *Washington v. Texas*, 388 U.S. at 19, 18 L. Ed. 2d at 1023, 87 S. Ct. at 1923; *King*, 154 Ill. 2d at 224. Furthermore, it impacted the defense strategy, which includes deciding which witnesses to present at trial. *People v. Hood*, 244 Ill. App. 3d 728, 734, 614 N.E.2d 335 (1993).

It is clear that the State intended to increase Studencki's sentence only if he testified for the defense. The threat to increase Studencki's sentence was successful. Studencki did not testify for fear he would be punished. It is telling that the State never filed a written motion to increase Studencki's sentence.

The State's intimidation of witnesses cannot be tolerated in our legal system. It is no different from other types of witness intimidation for which there can be serious sanctions. Studencki was not a minor player in this case. He was the key person in the transaction; the one who was under surveillance by the police. The State was using a threat to increase Studencki's sentence, which was two years less than the statutory minimum, to transform him "from a willing

witness to one who would refuse to testify." *United States v. Smith*, 478 F.2d 976, 979 (D.C. Cir. 1973).

The intimidation in this case is similar to that in *People v. Mancilla*, 250 Ill. App. 3d 353, 358, 620 N.E.2d 1163 (1993), where the conviction was reversed because the prosecutor intimidated a potential defense witness into not testifying. That potential witness, who was a resident undocumented worker from Mexico, decided not to testify after the State admonished her about perjury and her immigration status. *Mancilla*, 250 Ill. App. 3d at 360.

Another similar case is *Smith*, 478 F.2d at 979, where the conviction was reversed because the prosecutor intimidated a vital defense witness from testifying. The prosecutor had warned the witness that he should consult an independent attorney because his potential testimony could subject him to prosecution for carrying a dangerous weapon. *Smith*, 478 F.2d at 978.

We cannot assume that Studencki's testimony would not have made a difference to the jury. Without it, the testimony of the police officers was uncontradicted. Since the jury was not allowed to hear Studencki's testimony, it was precluded from judging his credibility against the credibility of the police officers. Thus, defendant was prejudiced by the State's intimidation of Studencki. As a result, we reverse defendant's conviction and remand this cause for a new trial.

■ Defendant waived the closing argument issue because he did not specifically raise it in his post-trial motion. Instead, he raised only a general allegation of prejudicial closing argument remarks. *People v. Williams*, 214 Ill. App. 3d 499, 511, 574 N.E.2d 62 (1991); *People v. Phillips*, 186 Ill. App. 3d 668, 682, 542 N.E.2d 814 (1989).

■ Based on our determination that the cause must be remanded for a new trial, we must consider the sufficiency of the evidence in order to protect defendant's constitutional right against double jeopardy. *People v. Reynolds*, 257 Ill. App. 3d 792, 806, 629 N.E.2d 559 (1994). Although we are not making a finding as to defendant's guilt or innocence that will be binding in a new trial, we conclude that the evidence presented at trial was sufficient for a jury to decide that defendant was guilty beyond a reasonable doubt.

Because we are remanding this case for a new trial, we decline to address defendant's sentence.

Based on the foregoing, we reverse the circuit court judgment and remand this cause for a new trial.

Reversed and remanded.

RIZZI, P.J., and GREIMAN, J., concur.