2025 IL App (1st) 231822-U

No. 1-23-1822

Order filed September 19, 2025

Fifth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 23 MC1 190510 |
| | ) | |
| JASMINE BROXTON, | ) | Honorable |
| | ) | Peter M. Gonzalez, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE TAILOR delivered the judgment of the court.
Presiding Justice C.A. Walker and Justice Hyman concurred in the judgment.

**ORDER**

¶ 1   *Held*:   Defendant's convictions for leaving the scene of a motor vehicle accident with damage to a vehicle and operating an uninsured motor vehicle are reversed where the evidence was insufficient to establish beyond a reasonable doubt that she drove the offending vehicle.

¶ 2   Following a bench trial, defendant Jasmine Broxton was found guilty of leaving the scene of a motor vehicle accident with damage to a vehicle and operating an uninsured motor vehicle. Broxton was sentenced to 18 months' conditional discharge and ten days in the Cook County

Department of Corrections and ordered to pay a $500 fine. On appeal, Broxton argues, *inter alia,* that the State failed to prove that she drove her vehicle, as opposed to another occupant driving. We agree with Broxton and therefore reverse her convictions.

¶ 3     Broxton was charged with one count of leaving the scene of a motor vehicle accident with damage to a vehicle (625 ILCS 5/11-402(a) (West 2022)), one count of driving on a suspended license (625 ILCS 5/6-303(a) (West 2022)), one count of operating an uninsured motor vehicle (625 ILCS 5/3-707(a) (West 2022)), and one count of possession of cannabis (720 ILCS 550/4(c) (West 2022)). Prior to trial, the State dismissed the possession of cannabis charge.

¶ 4     At trial, Derrick Solid testified that on February 26, 2023, he was at his mother's house in Chicago when he heard a loud bang. He looked outside and did not see his vehicle that had been parked in front of the house. Once outside, Solid saw his vehicle two to three houses away on the sidewalk, "smashed" between a tree and a gate. Another vehicle was beside Solid's vehicle, and he saw Broxton, whom he identified in court, climbing out of the driver's side window of that other vehicle. Solid was not asked whether he saw anyone else in or about the car she exited. Nor was Solid asked to identify which vehicle belonged to him and which vehicle Broxton climbed out of, but there does not appear to be any dispute that Solid's vehicle was a sedan and that Broxton climbed out of a sport utility vehicle.

¶ 5     Solid ran to his vehicle and asked Broxton if she had a license and insurance. Broxton did not respond and instead tried to "fight," threw a bottle of alcohol, and began to walk away from him. Solid asked Broxton for her license and insurance again, but Broxton began arguing with Solid and his family. Solid flagged a passing police vehicle and, when the officer responded to the

scene, Broxton began to walk off again. Solid stated that the quarter panel around the bumper of his vehicle was damaged, a tire was bent, and the bottom of his vehicle was also damaged.

¶ 6       On cross-examination, Solid testified that he did not see the accident. When the officer arrived, Broxton was walking away and about to turn the corner onto another block.

¶ 7       On redirect examination, Solid first testified that 30 to 40 seconds elapsed from the time he heard the bang to when he went outside and saw Broxton climbing out of her vehicle, but then acknowledged that it was a minute to a minute and a half.

¶ 8       Chicago police officer Zurita (no first name given) testified that he responded to the scene and spoke with Solid, who told him that Broxton, whom Zurita identified in court, hit Solid's vehicle. Zurita approached Broxton, who kept walking away. Zurita grabbed Broxton's arm, which she kept "flailing." Eventually, other officers handcuffed Broxton. She never presented a driver's license or insurance.

¶ 9       The State published footage from Zurita's body-worn camera (BWC), which is included in the record on appeal and has been viewed by this court. A portion of the BWC video was admitted into evidence. The admitted footage depicts individuals arguing with Broxton in a loud and confrontational manner. Two vehicles are situated beside each other and facing a tree; the driver's side of an SUV is pressed against the passenger side of a sedan. The video shows that the air bags had deployed on both the driver's and passenger's side of the SUV. A man in white clothing is shown straddling the two cars and pulling a child out of the driver's side window of the SUV. He then hands the child to a man wearing a black "Raiders" jacket. Moments thereafter, a man wearing a yellow shirt and black cap and standing on the sidewalk near Broxton is overheard identifying a male as the person who hit Solid's car, pointing to a man on the street. Solid, however, informs

Zurita that Broxton hit his vehicle. Broxton begins walking away from the accident. The man in white clothing places Broxton in a bear hug from behind but Broxton keeps walking down the sidewalk away from the scene; he then releases her and they walk hand-in-hand for a short time. The man in the black Raiders jacket follows them with the child in his arms.

¶ 10    Approximately one minute after Broxton walks away from the scene, Zurita catches up to her and attempts to talk to her. She denies driving the vehicle and states that she was attempting to retrieve her child. Broxton walks away again and is stopped by another officer. Broxton tells Zurita that she was walking "in circles" trying to calm her child and that Zurita could "follow" her. Zurita and another officer eventually restrain and handcuff Broxton.

¶ 11    On cross-examination, Zurita testified that Broxton's small child appeared to be with her. In addition, at least one man appeared to be with Broxton, identifying him as the man holding the child. Zurita also said that he and other officers were unable to open the driver's side doors of Broxton's vehicle until Solid moved his vehicle, and they could not open the passenger side doors at all.

¶ 12    On redirect examination, Zurita stated that he "r[a]n the registration" of the vehicle and learned it was registered to Broxton. Defense counsel objected to that testimony as hearsay, which the trial court overruled.

¶ 13    The trial court denied the defense motion for directed verdict, stating there was evidence that Broxton was the driver because she was on the scene and the car was registered to her. However, the court granted the defense motion for a directed finding on the driving on a suspended license count. The defense did not present evidence and the parties proceeded directly to closing argument.

¶ 14    Following argument, the trial court found Broxton guilty of leaving the scene of a motor vehicle accident with damage to a vehicle and operating an uninsured motor vehicle. In ruling, the court stated that Broxton was "clearly on scene" and had "conversations" when she exited the vehicle. The court further stated that Solid was a "very credible" witness who saw Broxton exiting the driver's side window of the vehicle, which was "probably the only way she could exit." The court noted that Broxton started to "walk away" from the scene, did not give her information, and would not engage with the officers.

¶ 15    Broxton was sentenced to 18 months' conditional discharge and ten days in the Cook County Department of Corrections and ordered to pay a $500 fine.

¶ 16    Defense counsel filed a motion for judgment notwithstanding the verdict or, in the alternative, a motion for a new trial. Counsel argued, *inter alia,* that the State failed to prove beyond a reasonable doubt that Broxton drove the vehicle. Additionally, counsel argued that the trial court relied on inadmissible hearsay that the vehicle was registered to Broxton. The trial court denied the motion.

¶ 17    On appeal, Broxton challenges the sufficiency of the evidence establishing that she drove the vehicle for purposes of the offenses of leaving the scene of a motor vehicle accident with damage to a vehicle and operating an uninsured motor vehicle. According to Broxton, Solid's testimony—that Broxton climbed out of the driver's side window—was insufficient because the accident left all the doors of Broxton's vehicle inoperable and exiting the driver's side window was the only egress. She contends that the State offered no evidence that she was driving the vehicle, that another person could just as well have been driving the vehicle, and the court necessarily engaged in speculation when it found that she was driving the vehicle. We agree.

¶ 18    In considering a challenge to the sufficiency of the evidence, the relevant inquiry is " 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original.) *People v. McLaurin*, 2020 IL 124563, ¶ 22 (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). This court will not retry the defendant. *People v. Nere*, 2018 IL 122566, ¶ 69. The trier of fact's role is to "assess the credibility of the witnesses, weigh the evidence presented, resolve conflicts in the evidence, and draw reasonable inferences from the evidence." *People v. Daniel*, 2022 IL App (1st) 182604, ¶ 102. A reviewing court will not substitute its judgment for that of the trier of fact with respect to those issues. *People v. Siguenza-Brito*, 235 Ill. 2d 213, 224-25 (2009).

¶ 19    The trier of fact need not "disregard inferences that flow normally from the evidence before it" or "search out all possible explanations consistent with innocence and raise them to a level of reasonable doubt." *People v. Jackson*, 2020 IL 124112, ¶ 70. Therefore, we "must allow all reasonable inferences from the record in favor of the prosecution." *People v. Givens*, 237 Ill. 2d 311, 334 (2010). "An inference is 'a conclusion as to the existence of a particular fact reached by considering other facts in the usual course of human reasoning.' " *People v. Steading*, 308 Ill. App. 3d 934, 940 (1999) (quoting Michael H. Graham, Cleary and Graham's Handbook of Illinois Evidence § 302.2, at 93 (7th ed. 1999)). However, there is a line between reasonable inference and mere speculation. *People v. Sanchez*, 2013 IL App (2d) 120445, ¶ 28. "A reasonable inference within the purview of the law must have a chain of factual evidentiary antecedents. If an alleged inference does not have a chain of factual evidentiary antecedents, then within the purview of the law it is not a reasonable inference but is instead mere speculation." *People v. Davis*, 278 Ill. App.

3d 532, 540. A conviction will be set aside where "the evidence is so unreasonable, improbable, or unsatisfactory that it justifies a reasonable doubt of the defendant's guilt." *People v. Bradford*, 2016 IL 118674, ¶ 12.

¶ 20    The State contends that the essential fact that Broxton was driving the car is proven by circumstantial evidence "because Solid observed defendant exiting the driver's window of her vehicle, the vehicle was registered to defendant, and the body camera video supported the inference that defendant was the driver." It is plain, however, that there are no facts, direct or circumstantial, to support the contention that Broxton was the driver as opposed to another adult who was in the car with her. No one who testified saw the crash occur. No one who testified saw Broxton driving the car. Officer Solid testified that there was at least one other adult present with Broxton. The BWC video suggests that another adult was just as likely to have been driving the car as Broxton was. Accordingly, for the reasons we explain below, it is mere speculation that Broxton drove the offending vehicle. See *Davis*, 278 Ill. App. 3d at 541 ("A person's liberty is an endowment that is too valuable to be lost on speculation of wrongdoing.").

¶ 21    To prove Broxton guilty of leaving the scene of a motor vehicle accident in violation of Section 11-402(a) of the Illinois Vehicle Code, the State needed to prove that Broxton drove a vehicle involved in a motor vehicle accident resulting in damage to another vehicle and failed to remain on scene in compliance with the requirements of section 11-403 of the Illinois Vehicle Code. 625 ILCS 5/11-402(a) (West 2022). To find Broxton guilty of operating an uninsured motor vehicle, the State needed to prove that Broxton operated a motor vehicle that was not covered by liability insurance. 625 ILCS 5/3-707(a), (b) (West 2022). As to each offense, Broxton challenges

the sufficiency of the evidence establishing that she drove the vehicle that struck and damaged Solid's vehicle.

¶ 22　　Viewing the evidence in the light most favorable to the State, no rational trier of fact could have found beyond a reasonable doubt that Broxton drove the SUV that struck Solid's sedan. The State's evidence in this case was entirely circumstantial and premised on a theory that Broxton was the only adult in her vehicle. But there was substantial evidence suggesting one or more other adults were in the vehicle with her and could have been driving. Neither Solid nor Zurita, the two witnesses presented by the State, testified he saw Broxton drive the vehicle that crashed into Solid's car or witnessed the accident occur. Rather, the State merely proved that Broxton was in the vehicle. Solid testified that he heard a loud bang and, approximately one minute to a minute and a half later, went outside and observed Broxton climb out of the driver's side window of the SUV that struck his sedan. However, the BWC video shows a man in white clothing removing a child from the car and handing her to a man in a black Raiders jacket. Zurita testified that the child was Broxton's and that at least one adult was with Broxton. The BWC video evidence suggests that the man in white clothing and man in the black Raiders jacket were well known to Broxton. The man in white clothing held Broxton in a bear hug from behind and then held her hand as they walked away from the scene. The man in the black Raiders jacket was holding Broxton's child in his arms for several minutes. Moreover, it defies common sense that Broxton would leave her child in the car while arguing with Solid's family members several car lengths away if she did not know one or both of the men removing her child from the car. In addition, the BWC video shows that as a woman in a pink nightgown is yelling at Broxton, a man wearing a yellow shirt near Broxton is talking to police and pointing to a man, accusing "him over there" of hitting Solid's car. Broxton

is standing to the left of the man in yellow who is pointing and, although it is unclear who he is pointing at, it is clear he is not pointing at Broxton. This is additional evidence that at least one other adult was in the car with Broxton. Given that it took Solid a minute to a minute and a half to get to the scene, it is just as likely that more than one adult could have exited the car from the driver's side window and that either one of them could have been driving. Our review of the full evidentiary record reveals a chain of factual evidentiary antecedents that cannot bear the weight of the court's inference that Broxton drove the offending vehicle. On this hopelessly thin record, the court's finding that Broxton was driving the offending vehicle was speculative.

¶ 23    The State then contends that the vehicle registration supports the trial court's finding that Broxton was driving the vehicle. Officer Zurita testified that he checked the registration of the vehicle that struck Solid's vehicle and learned it was registered to Broxton, which the court admitted over Broxton's objection. Broxton contends that the State failed to provide a certified copy of the vehicle's title as proof of an exception to the hearsay rule. We agree with Broxton that this evidence was inadmissible hearsay, the circuit court erred by relying on it, and that the error was not harmless.

¶ 24    Hearsay is "an out-of-court statement offered to prove the truth of the matter asserted" and is generally inadmissible unless it falls within an exception to the hearsay rule. *People v. Williams*, 2023 IL App (1st) 192463, ¶ 94. However, the admission of hearsay is harmless if there is no "reasonable possibility the verdict would have been different had the hearsay been excluded." *People v. Sample*, 326 Ill. App. 3d 914, 925 (2001). In examining whether error is harmless, reviewing courts may "(1) focus on the error to determine whether it might have contributed to the conviction; (2) examine the other properly admitted evidence to determine whether it

overwhelmingly supports the conviction; or (3) determine whether the improperly admitted evidence is merely cumulative or duplicates properly admitted evidence." *Williams*, 2023 IL App (1st) 192463, ¶ 130.

¶ 25    The State argues that Zurita's vehicle registration testimony was not offered for its truth but to show the officer's course of investigation to learn Broxton's identity. We disagree. The registration was inadmissible hearsay because the State relied on it for its truth, that is, to prove that Broxton owned the vehicle, which it then used to argue that she was driving it at the time of the accident. The State's cases all involve course-of investigation evidence that was not offered for its truth. See *People v. Davison,* 2019 IL App (1st) 161094, ¶ 32; *In re Jovan A.*, 2014 IL App (1st) 103835, ¶ 23. Further, this testimony was not based on Zurita's personal knowledge because he did not know this information until he was informed of it through the inadmissible hearsay. Finally, without the actual record of the vehicle registration being admitted, it would not qualify under the business records exception. Ill. R. Evid. 803(6).

¶ 26    The State then contends that even if Zurita's vehicle registration testimony was inadmissible hearsay, its admission was harmless because the remaining evidence established that Broxton was driving the offending vehicle. We disagree that the hearsay evidence was harmless. The outcome of Broxton's trial likely would have been different had Zurita's vehicle registration testimony not been admitted. In denying Broxton's motion for directed verdict, the court stated that there was sufficient evidence to show Broxton drove the offending vehicle because she was at the scene and the vehicle was registered to her. It expressly relied on the hearsay evidence for its truth, that Broxton was driving the vehicle because it was registered to her. The court pointed to no other evidence to suggest Broxton was the driver. After denying Broxton's motion for

directed verdict, Broxton elected not to offer evidence and the parties proceeded to closing argument, with the State once again arguing that Broxton was driving the vehicle because it was registered to her. Although the trial court did not mention the vehicle registration in its ruling finding Broxton guilty, the only evidence it pointed to was the BWC video footage and Solid's testimony establishing that he witnessed Broxton exiting her vehicle through the driver's side window approximately a minute to a minute and a half after he heard the crash. However, based on our review of the entire record of evidence in this case, a reasonable inference cannot be drawn that Broxton drove the offending vehicle based on her mere presence at the scene. In the absence of any other evidence that Broxton was driving the vehicle, the registration testimony necessarily was a material factor in the trial court's ruling, particularly where the court expressly relied on it only minutes earlier in denying Broxton's motion for directed verdict and no additional evidence was offered thereafter. Accordingly, based on the hopelessly underwhelming nature of the State's evidence identifying the driver of the offending vehicle, the court's error in admitting the registration testimony could not have been harmless.

¶ 27    The State finally argues that Broxton's departure from the scene is evidence of her guilt. See *People v. Harris*, 2023 IL App (1st) 210754, ¶ 78 ("[A] defendant's flight from police also may indicate consciousness of guilt."). The BWC video shows Broxton walking away from the scene of the accident. The video also shows a lot of yelling and confrontation. Broxton then walked away, thereby removing herself from the angry group of people who had gathered at the scene and were yelling at and confronting her. More importantly, however, Broxton did not walk away alone. The man in white clothing and the man in the black jacket holding Broxton's child walked away from the scene as well. If walking away exhibits consciousness of guilt here, then the two men

who walked away with Broxton, one or both of whom were with Broxton, exhibited the same consciousness of guilt.

¶ 28    The evidence was insufficient to prove Broxton was the driver of the vehicle that struck and damaged Solid's vehicle for purposes of her convictions for leaving the scene of a motor vehicle accident and driving an uninsured vehicle.

¶ 29    For the foregoing reasons, the judgment of the circuit court is reversed.

¶ 30    Reversed.